EUGENE BLOCK, complainant,

*v.*

BELL FURNITURE COMPANY, a New Jersey corporation, defendant.

[Argued May 23d, 1932.   Decided October 17th, 1932.]

*Messrs.. Stein, Hannoch & Lasser (Mr. Herbert J. Hannoch, of counsel), for the appellant Hoffman Realty Company.*

*Mr. Charles R. Hardin,* substituted receiver of the Bell Furniture Company, *pro se.*

*Mr. Arthur T. Vanderbilt,* for the New Jersey National Bank and Trust Company.

*Messrs. Bilder & Bilder,* for the West Side Trust Company.

The opinion of the court was delivered by

CASE, J.

The matter comes before us on an appeal by Hoffman Realty Company, a corporation, from an order of the court of chancery entered on the opinion of Vice-Chancellor Church affirming a disallowance by Harry G. Hendricks, then receiver of the Bell Furniture Company, of certain parts of appellant's claim.

Bell Furniture Company, a New Jersey corporation, in a friendly proceeding instituted in chancery by its president under section 65 of the General Corporation act, as amended by chapter 300 (*P. L. 1912 p. 535*), was found to be conducting business at a great loss and prejudicially to its creditors and stockholders and, on May 22d, 1931, the receiver was appointed. The defendant corporation was the occupant of premises at 161-163 Springfield Avenue, Newark, which it held as the assignee of a long term lease made between its assignor, The Donald Company, as tenant and the appellant, owner, as landlord. The receiver, after his appointment, continued possession until July 2d, 1931, when he elected not to take over the leasehold and abandoned the premises.

On July 22d, 1931, the landlord, by a writing dated a day earlier and served on the defendant company and its receiver, demanded the restoration of the premises to substantially the same condition as they were in at the commencement of the term and gave notice that the landlord had elected to re-enter

as agent of the tenant, would apply any rent received to the payments due under the lease and would hold the obligated parties, including the receiver to the extent of the assets in his possession, liable for any deficiency.

The first item of appellant's claim is: "Rent for the month of July, amounting to $1,458.33, of which sum two-thirty-firsts thereof, or $94.08, is owing by said receiver as part of his cost of administration." Paragraph 1 of the lease, as modified, called for a rental payment in monthly installments of $1,458.33 on the first day of each month in advance until May 1st, 1945. The item was disallowed *in toto* but the receiver concedes that $94.08 is a fair charge for the use and occupation had by him on July 1st and July 2d. The last mentioned sum is therefore out of the controversy. Whatever might have been said on the liability of the receiver to pay the balance of the month's rent as an administration expense, for the reason that he was in occupation on the first day of the month when the rent, according to the lease, became due, is beside the point because (1) the claim is not so grounded and (2) the landlord itself, exercising an election under the lease, re-entered the premises as agent of the tenant before the month was ended and relieved the receiver of whatever possession or right of possession he might otherwise have been chargeable with. The tenant on whose behalf the appellant, as agent, re-entered was the defendant company, not the receiver who, in electing not to take over the leasehold and in abandoning the premises, was within his authority. *Stockton* v. *Mechanics and Laborers Savings Bank, 32 N. J. Eq. 163; Clark on Receivers 442.* The rent for the month of July thus falls in the same category with other future rents under the lease. For the reasons hereinafter stated the claim, except to the extent of $94.08, was properly rejected.

The second item is the sum of $1,447.14, excess 1931 taxes under paragraph 2 (b) of the lease. Paragraph 2 provided that in addition to the rental payments of $1,458.33 per month, and as part of the total rent to be paid by the tenant, the tenant agreed to pay (a) water rents, (b) taxes in excess

of a fixed amount and (c) the cost of plate glass insurance. Paragraph 2 (b) reads as follows:

"2. In addition to the foregoing rental and as part of the total rent to be paid by the tenant, the tenant agrees to pay: * * * (b) The amount of all taxes which may annually during the term of this lease be assessed against the demised premises in excess of the taxes for the year 1923 (which taxes amount to the sum of $3,102, and which shall be borne by the landlord), and also the amount of all municipal assessments which may be levied against the demised premises, said additional payments to be made on the first day of the month succeeding the date of the ·issue of bills for said taxes and assessments respectively."

After an intervening clause (c) setting forth the details of the payment of the plate glass insurance was subdivision (d) as follows:

"(d) On failure of the tenant to make payments when due for water rents, or plate glass insurance, or excess taxes and municipal assessments, as hereinbefore provided, the landlord may pay the same for and on behalf of the tenant, and the amount of each payment shall be regarded as so much additional rent due and owing to the landlord by the tenant on the first day of the month succeeding such payment, and the landlord may have all such remedies against the tenant, and the tenant's goods, because of its failure to pay the same, as is now, or may hereafter be provided by law for the landlord in other cases of non-payment of the monthly rentals hereinbefore mentioned."

The tax bill for 1931 taxes was issued by the municipality during the month of April, 1931, and under the cited paragraph the tenant was obligated to pay the amount claimed on May 1st, 1931, as part of the total rent. The receiver allowed one-half of the item and disallowed the remainder. It is contended by the receiver and by other claimants of the fund that this disposition was correct, upon the theory that 2 (b) and 2 (d) must be read together; that the obligation was upon the tenant to pay only if and when the landlord itself paid the tax; that there is no proof that the landlord paid the second half of the year's tax and that consequently no liability as to that portion fastened on the tenant. We do not so construe the contract. Paragraph (b), considered by

itself, is a complete and mandatory obligation upon the tenant to pay, as a part of its rental obligation, the full excess in the annual tax on the first day of the month succeeding the date of the issue of the tax bill. Paragraph (d) recognizes and emphasizes that obligation and is specifically grounded on the fact that an omission in this respect is a failure by the tenant in its contract. The latter paragraph begins thus: "On failure of the tenant to make payments when due * * *." There would be no failure if the tenant were not under a duty, and the only duty that can be read in these words is the duty to pay the excess tax on the day when the tenant had obligated itself to pay. The excess tax payment in its entire amount was due from the tenant, under the facts of the case, on May first. Due to whom? Those who seek affirmance of the decree below say that if due, it was due only to the city under paragraph (b) and that it did not become due to the landlord until the latter acted under paragraph (d). This distinction, we think, is specious. The contract concerning payment of the tax, to whomever payable, was for the benefit of the landlord, one of the contracting parties, and not at all for the benefit of the city. The municipality is not concerned with inter-party arrangements between successive owners, or between landlord and tenant, or otherwise, as to who shall pay a tax. Real estate is its own security for the payment of taxes. To save the property, that is to say, to save the owner of the property, from a part of this charge, the parties to the lease agreed that the excess beyond a fixed amount would be paid in lump by the tenant as part of the total rent. The default was against the landlord.

Paragraph (d) provides a procedure, optional with the landlord, for the payment of the tax in the first instance by it. If the tax remained unpaid, governmental machinery would inevitably, in due season, begin to work against the property. The permissive "may" in paragraph (d) as contrasted with the mandatory "shall" in paragraph (b) enabled the landlord, if it so wished, to forestall such action without loss of right against the tenant. This construction, as it seems

to us, is not only reasonable but gives effect to the intention of the parties and retains full value to each of the provisions.

The tax claim should have been allowed in full and given preference. *3 Comp. Stat. p. 3066 § 4; 2 Comp. Stat. p. 1652 § 86.*

The next item of appellant's claim was for $30,500 alleged to be the fair and reasonable cost of restoring the demised premises to substantially the condition they were in at the commencement of the term. It is grounded in paragraph 4, subdivision (f) of the lease, which is:

"4. This lease is made on the following express covenants, each of which the tenant agrees to observe and perform: * * * (f) * * * in case at any time during the term * * * a receiver (be) appointed of its property and effects, the tenant shall, if the landlord shall so require, immediately thereafter restore said premises to substantially the same condition as they were in at the commencement of the term, as more particularly shown on the sketches detailing the present condition of said premises, made by Edward A. Wurth, architect, annexed hereto and made part hereof * * *."

On July 22d, 1931, as stated above, the landlord made written and personal demand upon the defendant and the receiver for restoration. The vice-chancellor apparently considered that the covenant to restore was of a kind with the covenant to pay rent and, relying upon the principle stated in *Stockton* v. *Mechanics and Laborers Savings Bank, supra,* and *Klein* v. *W. A. Gavenesch Co., 64 N. J. Eq. 50,* refused allowance. We conceive that a different principle applies.

That the appointment of a receiver in insolvency proceedings may be a breach of a corporation's personal executory contract by reason of which a claim for damages against the estate will lie was the view of Chancellor McGill in *Spader* v. *Mural Decoration Manufacturing Co., 47 N. J. Eq. 18,* and of Vice-Chancellor Reed in *Bolles* v. *Crescent Drug and Chemical Co., 53 N. J. Eq. 614.* It seems settled in the federal practice under the bankruptcy act that, as a rule, bankruptcy constitutes an anticipatory breach of an executory contract and gives rise to a provable claim for consequent damages. *Central Trust Co.* v. *Chicago Auditorium Asso-*

*ciation, 240 U. S. 581; 60 L. Ed. 811; L. R. A. 1917 (B) 580.* However, Mr. Justice Pitney, in delivering the opinion briefly, excepts landlord and tenant cases from the purview of the application and, quoting *Co. Litt. 292b § 513,* observes that such cases are distinguishable because of the "diversity between duties which touch the realty and the mere personalty." Amongst the cases cited in the opinion as illustrative of this distinction are *Watson v. Merrill, 136 Fed. Rep. 359; 69 L. R. A. 719,* and *In re Roth and Appel, 181 Fed. Rep. 667; 31 L. R. A. (N. S.) 270.* The cases in the main have to do either with claims for future rentals or with claims for damages expected to result from the breach of covenant for the payment of future rentals. The theory upon which the bankruptcy courts refuse to validate claims against an estate for rentals not accrued at the filing of the petition is well stated in the *Roth Case* as follows:

"Rent is a sum stipulated to be paid for the use and enjoyment of land. The occupation of the land is the consideration for the rent. If the right to occupy terminate, the obligation to pay ceases. Consequently, a covenant to pay rent creates no debt until the time stipulated for the payment arrives. The lessee may be evicted by title paramount or by acts of the lessor. The destruction or disrepair of the premises may, according to certain statutory provisions, justify the lessee in abandoning them. The lessee may quit the premises with the lessor's consent. The lessee may assign his term, with the approval of the lessor, so as to relieve himself from further obligation upon the lease. In all these cases the lessee is discharged from his covenant to pay rent. The time for payment never arrives. The rent never becomes due. It is not a case of *debitum in præsenti, solvendum in futuro.* On the contrary, the obligation upon the rent covenant is altogether contingent. *Watson v. Merrill, 69 L. R. A. 719; 69 C. C. A. 185; 136 Fed. Rep. 362.* See, also, *Co. Litt. 292b; Wood v. Partridge, 11 Mass. 492; Bordman v. Osborn, 23 Pick. 299.* It follows from these principles that rent accruing after the filing of a petition in bankruptcy against the lessee is not provable against his bankrupt estate as 'a

fixed liability, * * * absolutely owing at the time of the filing of the petition," within the meaning of section 63a (1) of the Bankruptcy act of 1898. It is not a fixed liability, but is contingent in its nature. It is not absolutely owing at the time of the bankruptcy, but is a mere possible future demand. Both its existence and amount are contingent upon uncertain events." The *Watson Case* applies essentially the same theory.

That a claim under a covenant in a lease for rent accruing after the surrender of the premises cannot be maintained under our insolvency statute was determined in *Stockton* v. *Mechanics and Laborers Savings Bank, supra;* but this holding deals only with the particular covenant to pay rent after the landlord is at liberty to resume possession of the leased property and does not involve the liability of the estate of an insolvent corporation for breaches, generally, of its covenants. *Bolles* v. *Crescent Drug and Chemical Co., supra.*

Therefore, the federal courts in the construction of the bankruptcy acts and our state courts in the construction of our insolvency laws are alike in holding that a lease covenant to pay rent does not justify a claim for unaccrued rents but that an adjudication of bankruptcy or insolvency may sometimes, at least, be such an anticipatory breach of an executory contract as will give rise to a provable claim for damages.

What has been said with respect to the appointment of a receiver in insolvency proceedings being a breach of an executory contract has point by analogy rather than by direct application so far as the present item is concerned. For the lease paragraph under consideration assumed such an appointment and was grounded thereon. The real question is whether the parties to the lease could so accelerate the duty to restore as to make it immediate upon a receivership and, if so, whether on a breach thereof the cost of restoration is allowable as damages, as a general claim, against the funds of the estate. We find no inherent fault in the claim for restoration of premises. Such a claim differs widely in principle from one for unaccrued rents. The bankruptcy courts recognize the distinction. *Trust Company of Georgia* v.

*Whitehall Holding Co., 53 Fed. Rep. (2d) 635; In re Barton Co., 34 Fed. Rep. (2d) 517.* The tenant made, for its own purposes, substantial structural changes in the building—an act that would have been waste, subject to immediate suit for damages, except for the permissive agreement granted in consideration of the personal covenant to restore. But it is said that at the time of the appointment of the receiver there was still an open contingency, that contingency being whether the landlord would, under the lease, require the restoration and that because of this uncertainty the obligation had not fastened in such fashion as to be a charge against the fund. We think that the so-called contingency is not to be measurably distinguished from the option, which a promisee has, to treat a repudiated executory contract as ended (*Samel v. Super, 85 N. J. Law 101*), nor, specifically, from the option, which a promisee, generally, has, to treat an executory contract as breached by bankruptcy proceedings and therefore ended. *Central Trust Co.* v. *Chicago Auditorium Association, supra.* A receiver was appointed and the landlord did, without undue delay, make the demand. The receivership gave the landlord the option of which he forthwith availed himself. There was no contingency in the real sense of that term. There were no doubts to be resolved. The cost of restoration, based on the sketches annexed to and made a part of the lease, is susceptible of accurate determination. To deny such a claim because it grounds in a covenant contained within a lease and to allow damages for the breach of such executory contracts as have to do with the rendering of personal services or the sale of merchandise (*Central Trust Co.* v. *Chicago Auditorium Association, supra; Rosenbaum v. United States Credit System Co., 65 N. J. Law 255; Spader v. Mural Decoration Manufacturing Co., supra; Barthen v. Lodi Corporations, 94 N. J. Eq. 177,* call for a refinement of reasoning too subtle to be sound. In *William Filene's Sons Co.* v. *Weed, 245 U. S. 597; 62 L. Ed. 497,* a federal receivership, Mr. Justice Homes, construing a lease and distinguishing between a rent covenant and a personal covenant creating a present debt with no contingency except those pos-

sibly and lawfully accelerating the time in which it was to be paid, held that the fact that the termination of the lease happened after the filing of the bill did not justify the rejection of the claim, notwithstanding the sum was not presently payable until then.

Saving an event which never happened, namely, a complete performance of the lease agreement, the tenant in the instant case was bound by personal covenant to restore the premises. By the explicit terms of the undertaking the time for the performance of that duty was accelerated by the appointment of the receiver. On that appointment the duty became immediate, subject only to the landlord's demand. The demand was seasonably made. The contract to restore was breached. The debt became present. The acceleration and the demand hung upon the receivership, lawfully made so to do, and in essence were an incident contemporaneous with that occurrence. This view harmonizes with that expressed in the *Filene Case*. It is also consistent with the recognition by this court in *Barthen* v. *Lodi Corporations, supra,* of a claim for breach of an executory contract by a corporation, after the corporation had been found insolvent and a receiver had been appointed.

The item should be allowed as a general claim. The amount, uncontradicted, appears in the proofs, but the newly appointed receiver asks the privilege of further inquiry as to the amount thereof and that request will be granted.

Finally, appellant claims $101,875 damages for the breach of the covenant to pay rent. No covenant for the payment of damages is involved, thus differing from *William Filene's Sons Co.* v. *Weed, supra,* and *Gardiner* v. *William S. Butler & Co., 245 U. S. 603; 62 L. Ed. 505.* Appellant concedes that it would properly have no claim for future rents (*Stockton* v. *Bank, supra; Klein* v. *W. A. Gavenesch Co., supra*), but contends that the filing of a claim for damages and not for the rents themselves is supported by the *Stockton Case* and by the *Bolles* v. *Crescent Drug Co. Case*. Whatever the *dicta* of these cases may suggest, the holdings do not embrace the principles for which appellant argues. The

strong trend of the federal opinions on like contentions in bankruptcy cases seems to the contrary (*In re McAllister-Mohler Co., 46 Fed. Rep. (2d) 91; In re Service Appliance Co., Inc., 39 Fed. Rep. (2d) 632; In re Goldberg, 52 Fed. Rep. (2d) 156*), particularly where the common law obtains. *Wells v. Twenty-First Street Realty Co., 12 Fed. Rep. (2d) 237.*

The essentially bankrupt character of our statute concerning insolvent corporations was recognized by this court in *Butler v. Commonwealth Tobacco Co., 74 N. J. Eq. 423.* The practical advantage of maintaining a harmonious doctrine in the administration of the assets of an insolvent corporation in the state and federal courts, where the provisions of our statute and the rationale of our jurisprudence permit, is apparent. *Nutz v. Murray-Nutz, Inc., 109 N. J. Eq. 95.* For one thing, it tends to avert an unseemly race for jurisdiction in the interest of one or another class of creditors. *Napier v. People's Stores Co., 98 Conn. 414; 120 Atl. Rep. 295.* The reasons why a claim on covenant for future rents may not be allowed adhere in large measure against the allowance of a claim for damages on the breach of such a covenant. This item of claim was properly rejected.

Appellant suggests that after the payment of administration expenses and of provable claims there may be a fund available for distribution to stockholders. The opportunity made possible in such an instance for a corporation to escape the obligation of a lease that has become burdensome and yet to retain for its stockholders a division of its assets seems highly inequitable. Even though the corporate life should continue, it would be stripped of vitality and of productive resources—a mere moribund existence. "It could hardly have been the intention of the lawmakers to distribute the surplus of assets, or, in other words, return capital, to the stockholders of the company [that is, to those who deliberately ventured for gain, and pledged their capital for the security of those who were induced to deal with them], and at the same time disregard those who, dealing with those stockholders upon the faith of that security, became justly entitled

to damages for breaches of contracts occasioned by an insolvency and suspension that the very capital relied upon was intended to ward off. Such distribution would be the protection of capital against its just liability." *Spader* v. *Mural Decoration Manufacturing Co., supra.*

It is impracticable to establish a rule that shall be applied generally in such instances. Each case presents its own problem. In the case at bar the amount of the surplus fund, if any, will be small. The affirmance of the chancery order as to the item last considered will be without prejudice to the right of the claimant, if it should appear that the proceeds in the hands of the receiver will exceed the amount required for the payment of administration expenses and allowed claims, to make application that either it be secured against rent losses before any distribution to stockholders or payment of its rejected claim be made to the extent of such excess funds. *Usher* v. *Sarco Company of New Jersey, 100 N. J. Eq. 428.* Although the 1912 statute, *supra,* permits the appointment of a receiver for a corporation that is not actually insolvent, and the bill of complaint alleged that the defendant was not insolvent, we deem that fact of no significance on the facts or the issues presented; except that the eventuality of surplus funds would scarcely arise in an insolvency.

The order under review will be modified accordingly.

*For modification*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.