The Goerke Company operated "Goerke's" department store on Broad street, Newark, until the receiver in insolvency took possession April 28th, 1932. These appeals are from the receiver's disallowances of claims.
1. Goerke Realties, Incorporated, the landlord, just before the decree of insolvency, issued a distraint for $10,337.50 rent for the month of April, due April 1st, 1932. The bailiff in possession surrendered to the receiver. The claim, with costs, was allowed. The appeal is from the receiver's refusal to pay the claim. He holds the note of the Goerke Realties, Incorporated, for $25,755 as an offset. The appeal, on the ground of refusal to pay, is inappropriate. The orderly course is a motion to direct payment. Another ground, that the allowance for costs ($350) is not set out in figures, is captious. The claim carries interest, counter-veiled by interest on the offset.
2. Goerke Realties, Incorporated, claims $16,935.99 for the receiver's use and occupation of the store in May, and $33,051.86 for June and July, the prevailing lease rental when the receiver entered. The receiver's possession was from April 28th to July 31st, 1932. The receiver allowed $23,102.70 ($7,700.90 a month) as reasonable compensation for the three months, that being his verdict upon the testimony of realty operators whose opinions of present day normal rentals ranged — the receiver's experts — from $10,000 to $15,000 per month to from $18,000 to $20,000 by those called by the landlord. The receiver adopted the highest figure set by one of his witnesses, $15,401.80 per month, and cut it in half to $7,700.90, because the receiver's occupancy was temporary, the witness having testified that one-half the normal rent was a reasonable price to expect from an itinerant tenant. His two other witnesses thought the cut should be one-third. The receiver's rating of his tenure is misconceived; *Page 393 
his allowance is not just. The cut to one-half of the fair rental value because the receiver's occupancy was temporary, finds no justification in the theory of the real estate experts, nor in the established circumstances. Although the receiver's occupancy was temporary, he was not a vagrant, picking up store bargains. His tenancy was imposed, not sought by the landlord. It was incident to the receivership, not a stroller's venture. An eight-story department store, covering an entire city block, is not a haphazard rental proposition. We all know that between renting seasons owners of vacant stores take in the gypsy vendor, and often at his own price, but that situation is not before us, nor are rentals in such circumstances the measure of value for use and occupation. Here the receiver's possession succeeded upon that of the company whose business he continued. His succession carried with it the implication that he would pay the prevailing rental, if reasonable, for his use and occupation. It was optional with the receiver to adopt the lease as an asset and sell it or to abandon it. He made no election, but stayed on to accommodate another, who, to be let in, indemnified the receiver against the rent charges. The commodious building is adapted to the business carried on in it for many years by Mr. Goerke; it is on the most prominent street and in the business center of the city; it is attractive and the name "Goerke" is the attraction. The building is, and the business was, second to none in the town. Goerke, the founder, prospered in it. Reaching out, and the slump, brought disaster to the business, not upon the excellence of the building for the type of business to which it had been devoted. The lease, made in 1929 to end in 1974, called for an annual rental of $180,000 until April 30th, 1931, and for six years thereafter $220,000 per annum, the tenant to pay taxes, assessments and water rates as rental. At the time of the lease, the City Stores Company — a Goerke enterprise — acquired all the capital stock of the Goerke Company and took over the business as one of its chain stores. In January, 1932, when the business depression was at its low level, the rent was reduced to $124,055 per annum, plus taxes, assessments and *Page 394 
water rates. The rental, as reduced, yields, gross, a fraction over six per cent. on the valuation of the land and building ($1,937,700) as appraised by the receiver's expert, whose rental appraisal of $15,401.80 he adopted per month as well as the witness' discount of fifty per cent. to itinerants. When upkeep is considered it must be admitted that the net annual rental under the lease is a meagre return upon the investment.
Now as to the established circumstances. The receiver is primarily liable, but he is not to pay for the use and occupation. Immediately upon his appointment, the receiver sold all the merchandise to a New York concern for sixty-six per cent. of the appraised value, with leave to retail it on the premises, the purchaser assuming to pay for the use and occupation. The scheme was sanctioned by the court upon the consent of the City Stores Company, the owner of all Goerke Company's stock and its heaviest creditor, and upon its subordinating its debts to the merchandise creditors of the Goerke Company and insuring the full amount of their debts. The debts have been paid. The purchaser used the store not only to sell the receiver's stock, but as much more as the traffic would stand, brought in by carloads through the back door and offered to the public falsely as the goods of the defunct company, to the dismay and injury of local merchants who registered protests, but too late. The trick had been turned — too late to be remedied, but a lesson to be remembered. The public was "taken in" and legitimate merchandising was dislocated and I cannot see with the eyes of the receiver why the profiteer should escape the rent at the expense of the landlord. The fixed rental is supported by the preponderance of proof as fair rental and it is deemed a fair charge for the use and occupation. Appeal sustained.
3. Goerke Realties, Incorporated, claims damages for the loss of rent for August and September, two months vacancy between the time the receiver quit and Goerke Realties, Incorporated, leased to another tenant. The claim was disallowed. The ruling, in so far as it denies equality to the claim with other creditors of the company, is sustained. The claimant may have whatever advantages may accrue after other *Page 395 
creditors are satisfied as indicated by Mr. Justice Case inBlock v. Bell Furniture Co., 111 N.J. Eq. 551, and with that it is content. Determination modified.
4. Goerke Realties, Incorporated, claims for taxes and water rent $24,767.39.
(a) Proportion of 1932 Newark tax for
 the first four months, $24,193.63
(b) Newark tax for part of 1929, for 1930
 and 1931 on 104 1/2 Halsey street,
 part of the leased premises ....... 507.76
(c) Water rents, March 26th to April 29th,
 1932 ............................... $43.00
 April 11th to May 3d 1932, 23.00 66.00 $24,767.39

The receiver concedes the debt, but disallowed it as a preferential claim and the appeal is from that ruling.
The lease provides that "in addition to the said annual net rentals and as such additional rental, the said lessee agrees to pay as and when due during each and every year of the term granted * * * all taxes and impositions, rates and charges which may be levied against the said lands and premises by the city of Newark * * *. The lessee will within twenty (20) days after such payment, upon request, furnish to the lessor a duplicate receipt therefor and in the event of the lessee failing to pay the same, the lessor shall be at liberty to make such payment and to add the amount thereof to the next month's rent to be collectible therewith as additional rental within the meaning of this lease."
Newark taxes for the year 1932, assessed upon the fair valuation of the property as of October 1st, 1931, were ascertained, fixed and one-half payable on April 1st, 1932, delinquent June 1st, following (Cum. Supp. Comp. Stat. p.3492), and under the lessee's covenant "to pay as and when due," to the use of the lessor, the taxes for the first half of the year had accrued when the receiver took possession. The proportion is simple arithmetic. By the fourth section of the Landlord and Tenant act, a lessor has a statutory priority for one year's rent accrued, though not payable, *Page 396 
when assets are taken by a receiver. The receiver takes the position that the taxes were not due until June 1st, and were not collectible by the lessor until twenty days thereafter; that the lessor could not have distrained before the receiver took possession and, having no lien, has no priority. The due date, as already indicated, was April 1st; the lessee's parenthetic covenant, to furnish a duplicate receipt within twenty days after request, did not extend the time for the payment of the taxes, but was intended merely as an assurance to the lessor that there had been no default. The priority does not rest in lien; it is a statutory preference. Franz Realty Co. v. Welsh, 86 N.J. Eq. 228.
The lessor's right to pay the accrued taxes and add them to and collect them with the next month's rent, as stipulated in the lease, may be a condition precedent to the right to sue or to distrain, but is not a prerequisite to the enjoyment of the preference given by the statute. The statutory favor extends to rents due as well as rents "which shall have accrued up to the day of the removal of the goods from off the said premises, whether by the terms of lease the day of payment shall have come due or not." The appeal from the ruling on item (a) is sustained.
(b) The taxes for 1929 and 1930 are barred by limitation. So much of 1931 as is within one year of the receivership is allowed as a preference.
(The receiver makes objection because he did not occupy 104 1/2 Halsey street. The lessee did, and this charge is part rental due by the lessee.)
(c) Water rents from March 26th to April 29th, 1932, and from April 11th to April 29th, are allowed as preferences.
5. The Fulton Improvement Company (formerly Goerke Holding Company) claims $2,414.24 moneys, book accounts, collected for its use. The receiver allowed it as a general claim. The appeal is from his refusal to charge it as a lien on the receivership funds.
When the City Stores Company was formed by Mr. Goerke in June, 1929, it took over the business of Goerke Company by an exchange of capital stock, and in determining the value *Page 397 
of the Goerke Company stock certain of the Goerke Company assets were excluded and were assigned to Goerke Holding Company, organized for that purpose by the stockholders of the Goerke Company. Among the assets assigned were book accounts due from customers, left for collection with the Goerke Company, collected by it in the ordinary course of business, mingled with the daily receipts and accounted for from time to time, except the balance for which the claim is made. The Goerke Company spent as it went and in all likelihood spent the balance long before the receivership. There is no proof that any of it was mingled with the funds that came to the receiver's hands. No trace, no lien. Ruling approved.
6. Richard J. Goerke made claim for $300, the value of a combination radio and victrola set sold in his behalf by the company upon which $103 has been collected and the claim is allowed for that amount. Let the balance of the account, if any, be transferred to him. Ruling approved.
7. The Fulton Improvement Company claims $12,498.94 net, surcharges against the Goerke Company to the accounts stated between Goerke Company and the Goerke Holding Company in arriving at the exchange value of the Goerke company stock for that of the City Stores Company. The proof of claim presented to the receiver does not establish a debt; an obligation to pay the surcharge is not manifest. The rejection of the claim will be upheld unless further and amplifying proof is made of the alleged undertaking. The receiver will give a further hearing and report his findings. Further argument may then be had on the appeal. *Page 398