Certain of the issues in the administration of this insolvency receivership, brought up by the order to show cause of November 28th, 1933, were left undertermined by the order or decree dated December 12th, 1933. These will be disposed of as follows:
The account of the petitioning substituted receiver will be allowed as a final account, pro tanto. One item of assets remains to be collected, and (when collected) to be distributed among the three remaining creditors entitled to share therein. (By consent of these three creditors the other creditors have already received distribution of a dividend based on the presumed collection of this item.) A brief supplemental account will therefore be necessary, prior to the receiver's discharge. *Page 194 
Allowances will be made as follows:
To the original receiver, Hendricks, none. (None is asked by him or on his behalf.)
To the solicitor and counsel for the complainant and the original receiver an allowance of $1,150 in addition to the $1,500 already received.
To the master who audited the accounts and took testimony on the Hoffman Realty Company claim, $350.
To the substituted receiver, for services as receiver, and legal services as his own solicitor and counsel, $2,000. ($1,500 was heretofore paid to the original receiver.)
The substituted receiver will be instructed to pay no dividend on the claim by the receiver of the New Jersey National Bank and Trust Company, until he has received from the latter receiver payment in full of the amount owing by that bank to the present receivership trust estate; except that the present receiver may effectuate a set-off with the receiver of the bank, computed on the basis mentioned. In other words, the present receiver may waive or discharge all further claim against the bank's assets upon receiving from the bank's receiver (1) payment of a sum which will make the total sum received by him from the bank's receiver equal to the balance obtained by subtracting from the present receiver's total claim against the bank ($30,901.13), the amount of the dividend which would be payable to the bank's receiver from the present receivership estate if the bank had paid the total sum of $30,901.13; plus (2) a waiver or discharge by the bank's receiver of all further claim against the present receivership.
When the defendant company was adjudicated insolvent it was indebted to the bank in a sum since adjudicated as $23,579.27 — the bank's claim was allowed in this amount. After the defendant company's insolvency the receiver deposited the moneys of the receivership in that same bank. Thereafter the bank became adjudicated insolvent and a (federal) receiver was appointed therefor by the comptroller of the currency. The amount due from the bank to the Bell company's receiver was adjudicated as $30,901.13 — claim *Page 195 
being allowed in that amount by the bank's receiver, and a fifty per cent. dividend thereon having already been paid by the bank's receiver to the Bell company's receiver.
The bank's receiver contends that each receiver should be entitled to receive dividends from the other, as and when distribution is made by each to creditors generally — and, at first blush that seems the natural and fair course. Consideration, however, shows that this is not so.
Our statute (General Corporation act, section 66), contemplates "just set-offs" in cases of "mutual dealings" between the corporation and any other person; the justice of the set-off to be determined upon the application of equitable as well as legal principles. If, at the time of the insolvency of the Bell company it had owed the bank $23,000 on a note, and had a deposit of $30,000 with the bank, those respective debts would arise out ofmutual dealings — dealings between the Bell company and the bank — and the right of set-off would exist. The equitable situation between the two would be that the bank owed the Bell company $7,000.
The situation in the instant case is entirely different. At the time the Bell company became insolvent, it owed the bank $23,000, but it had no counter-claim against the bank. The bank owed nothing to the Bell company; there were no mutual debts or credits.
When the Bell company's receiver deposited with the bank the moneys of the receivership, this created no mutual dealings. The $23,000 debt to the bank was owed by the Bell company, not the Bell company's receiver. The $30,000 debt owed by the bank (arising out of the receiver's deposit) was owed not to the Bell company, but to the Bell company's receiver, who represented not merely the Bell company, but also the Bell company's creditors. All of the Bell company's other creditors, at the time of that deposit, had rights in the money so deposited, co-equal with the right of the bank — rights proportionate to the amount of their claims against the Bell company. The bank had of course no right (and it is not so contended) to appropriate $23,000 out of that $30,000 deposit and thus obtain payment in full of its claim against *Page 196 
the Bell company, to the detriment of the other creditors of the Bell company.
It is obvious that the bank's receiver can have no greater right than the bank itself had. Assuredly the occurrence of the insolvency of the bank was not an act which gave rise to any greater right in the bank or its creditors against the Bell company's receiver than theretofore existed. That occurrence gave no benefit to the Bell company's receiver or creditors; nor was it anywise caused by them.
Immediately prior to the bank's insolvency, the bank had a right, as against the Bell company's receiver, to receive such dividend from the Bell company receivership assets as should be ultimately determined by this court; it also had a liability to the Bell company receiver for the $30,000 deposit in full. Its right to receive dividend was of course completely subject to and conditional upon its discharge of its liability for that deposit. Its retention of any portion of that deposit (beyond the amount of the dividend to which it was entitled) would be pro tanto an unlawful preference of itself over the other creditors of the Bell company — an impairment of the latter's rights without legal or equitable justification.
The rights of the bank's other creditors were not increased by the bank's insolvency, over the rights which the bank itself had prior to the bank's insolvency. They (represented by the bank's receiver) can have no right therefore to receive any dividends from the Bell company receiver until they pay in full the $30,000 deposit.
It will be observed that this does not adjudicate that the Bell company's receiver has a right to have his deposit claim paid in full as a preferred creditor of the bank, prior to dividends to the other creditors of the bank. He is simply a general creditor of the bank and has no greater right than any other general creditor to receive greater or earlier dividends from the bank's insolvent estate. He does, however, have the right to withhold from the bank's receiver any dividends on the original claim of the bank against the Bell company until he shall have received from the bank's receiver dividends aggregating the full one hundred per cent. *Page 197 
of his claim against the bank — just as he had that right against the bank prior to the bank's receivership.
Prior to the bank's receivership, the Bell company receiver had a right to obtain payment from the bank of the $30,000 deposit; he also had, as an equitable security for that payment, the (undetermined) sum to which the bank would be entitled as its proportionate dividend on its claim against the Bell company. Upon the happening of the bank's receivership, his right to obtain payment of the $30,000 from the bank was lost; it became only the right to obtain payment from the bank's receiver, of his proportionate dividend on his claim against the bank. But his security was not lost; he still kept the right to retain the dividend otherwise payable to the bank or the bank's receiver (out of the net assets of the Bell receivership estate) until he received payment in full of the $30,000 debt for which he held it as security.
The bank's receiver has no right to set-off the dividend due the bank from the Bell company receivership as a credit against the bank's debt to the receiver, and pay dividends to the Bell company receiver only on the difference, because set-offs, to be permissible, must be just and equitable — and such a set-off would not be just or equitable. The dividend payable to the bank is predicated upon the Bell receiver's deposit with the bank being a part of the assets of the Bell receivership estate (in the instant case that deposit constituted the entire assets of the Bell receivership estate), and, as already pointed out, the retention by the bank, or the bank's receiver, of any portion thereof (beyond the amount of dividend eventually payable to the bank on the basis of the Bell company receiver obtaining from the bank the full amount of his deposit), would to that extent prefer the bank over other creditors, and hence be inequitable, unjust and unlawful. Obviously the set-off above mentioned would constitute such a preferential retention (unless the bank's receiver should pay full one hundred per cent. dividend to the general creditors).
The determination in the instant case seems the necessary result of the application to the facts sub judice, of the legal *Page 198 
and equitable principles pertinent thereto. It is also in accordance with the principle applied by the United States supreme court in Gardner v. Chicago Title and Trust Co.,261 U.S. 453; 67 L.Ed. 741, and (with even greater pertinency) by the United States circuit court of appeals for the fourth circuit, in Hood v. Brownlee, 62 Fed. Rep. 2d 675 — and hence comes within the sanction of the expressed approval by our own court of errors and appeals of the principle that the administration of the assets of an insolvent corporation, in the courts of this state and in the federal courts, should be, wherever possible, in harmony. Block v. Bell Furniture Co.,111 N.J. Eq. 551 (at p. 561); 162 Atl. Rep. 414.