(No. 25275.—

THE PEOPLE *ex rel.* Oscar Nelson, Auditor of Public Accounts, *vs.* THE WEST TOWN STATE BANK.—(MARGARET O'NEIL LAWSON *et al.* Appellees, *vs.* CHARLES H. ALBERS, Receiver, Appellant.)

*Opinion filed February 13, 1940.*

WILLIAM J. FLAHERTY, (JOHN F. CASHEN, JR., and JAMES CONGER, of counsel,) for appellant.

JOHN O. WAGNER, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The question in this case is: Where the receiver of a banking corporation timely disaffirms a lease to the bank, containing no provision for damages for breach of a covenant to pay rent, can the lessor maintain a claim for rent accruing after such disaffirmance or for anticipatory damages for breach of the covenant?

In April, 1919, Margaret O'Neil Lawson executed a lease, in which her husband joined, to the West Town State Bank, of certain premises in the city of Chicago for a term of forty-five years, expiring April 30, 1964. The bank agreed to pay an annual rental of $1600 and all taxes, assessments, insurance and other charges against the premises during the term. The lease contained no provision for damages in case of a breach of the covenant to pay rent or abandonment by the lessee. The bank occupied the premises until June 21, 1931, when a receiver was appointed and liquidation proceedings were instituted in the circuit court of Cook county. With the approval of the court the receiver disaffirmed the lease as of January 1, 1932. He paid the rent, taxes and other charges to that date, and surrendered possession of the premises.

The lessor filed a second amended intervening petition in the liquidation proceedings, claiming $708.66 paid for the necessary repairs to the building, $250 commission paid a real estate agent for procuring a new tenant, attorney's fees for enforcing the covenants of the lease, and interest at seven per cent per annum on the monies expended by her. The petition further claimed damages from an alleged net loss of $1054 per annum as rent from the time of disaffirmance up to December 31, 1936, amounting to $7846.85, and damages of $28,458 for loss of rents during the remainder of the term, estimated on the same basis. The claim for repairs was allowed as a claim for alterations to the building, together with the commission paid the real estate agent, and $200 attorney's fees, all without interest. All the other claims were denied. Upon an appeal by the lessor, the Appellate Court held the omission in the lease to provide for stipulated damages in case of abandonment did not prevent recovery of damages actually suffered; that the lessor had suffered and was entitled to recover damages from the date of disaffirmance to the date of the hearing; and that future damages, if any, because of their uncertainty and lack of proof, must await their accrual. The decree of the trial court was reversed and the cause was remanded, with directions to enter a decree in harmony with the views expressed by the Appellate Court. The cause is here by leave granted the receiver to appeal. The trial court's allowance of the three items above mentioned is not challenged by appellant.

At the outset it seems desirable to clarify the issues. The claims in controversy are not for rent, as such, but are for damages measured by the loss of rentals, and the relief sought is payment from the estate of the bank in due course of administration and not from the receiver personally, although he is the only party defendant. Parties to a lease have the right to fix the amount of the rent as the amount of damages to be paid by the tenant in case

of a breach of the covenant to pay, and it may be regarded as damages for the purpose of the suit. (*Grommes* v. *St. Paul Trust Co.* 147 Ill. 634.) The reasons why a claim on covenants for future rents may not be allowed obtain, in large measure, against the allowance of a claim for damages on the breach of such covenant. (*Bloch* v. *Bell Furniture Co.* 111 N. J. Eq. 551, 162 Atl. 414.) The strong trend of Federal opinions under similar issues seems to be in accord with this doctrine. (*In re McAllister-Mohler Co.* 46 Fed. (2d) 91; *In re Service Appliance Co. Inc.* 39 id. (2d) 632; *In re Goldberg,* 52 id. (2d) 156;) particularly where the common law obtains. *Wells* v. *Twenty First Street Realty Co.* 12 Fed. (2d) 237.

The established rule is that a receiver, by virtue of his appointment, does not necessarily become liable upon the covenants of a lease made prior to his appointment by the party for whom he is receiver, but, subject to the order of the court, he has a right to timely elect whether he will adopt the lease and proceed thereunder, or reject it if he finds it is of no value to the estate. (*People* v. *Equitable Trust Co.* 366 Ill. 465; *Link Belt Machinery Co.* v. *Hughes,* 174 id. 155; *Spencer* v. *World's Columbian Exposition,* 163 id. 117.) The timeliness of the receiver's disaffirmance is not questioned on this appeal. The precise question as to liability after disaffirmance, where the lease contains no provision for damages in case of a breach of covenant to pay rent, has not been previously presented to this court.

*Chapman* v. *Kirby,* 49 Ill. 211, and *Green* v. *Williams,* 45 id. 206, where the tenant recovered damages from the landlord for breach of covenant, and *Marshall* v. *Grosse Clothing Co.* 184 Ill. 421, and *West Side Auction House Co.* v. *Connecticut Mutual Life Ins. Co.* 186 id. 156, where the landlord recovered from the tenant for breach of covenant to pay rent, are cited by appellees as analagous to the issue here. The issues there were between the parties to the contract and recovery was had because they were bound

by their covenants from which they could not escape. They are obviously not controlling in a case where the receiver has the right and has elected not to be bound.

There are two classes of cases where the question of liability, after disaffirmance by a receiver, has arisen. In one class the lease has contained a provision for damages in case of a breach of covenant to pay rent. In those cases it is held that the lessor may recover. (*Smith* v. *Goodman*, 149 Ill. 75; *Grommes* v. *St. Paul Trust Co. supra; William Filene's Sons Co.* v. *Weed*, 245 U. S. 597, 62 L. ed. 492; *Gardiner* v. *Butler Co.* 245 id. 603, 62 L. ed. 55.) Those cases are not applicable here. The other class of cases is where the lease contains no such provision. In the latter class of cases, there are some jurisdictions in which recovery by the lessor has·been permitted. (*Woodland* v. *Wise*, 112 Md. 35, 76 Atl. 502; *McGraw* v. *Union Trust Co.* 135 Mich. 609, 98 N. W. 390; *Minneapolis Baseball Co.* v. *City Bank*, 74 Minn. 98; *People* v. *St. Nicholas Bank*, 151 N. Y. 592, 45 N. E. 1129, where there was a reletting for the remainder of the term with a definitely ascertained loss; *Conover* v. *Sterling Stores Co.* 14 Del. Ch. 26, 120 Atl. 740.) In one case, *Leo* v. *Pearce Stores Co.* 54 Fed. (2d) 92, the court followed the *McGraw case.* On the other hand, the weight of authority is that such a claim is not provable. (*Gardiner* v. *Butler Co. supra; Bloch·* v. *Bell Furniture Co. supra; Cooper* v. *Casco Mercantile Trust Co.* 134 Me. 372, 186 Atl. 885; *Towle* v. *Comr. of Banks*, 246 Mass. 161, 140 N. E. 747; *In re Edgewood Park Junior College,* 123 Conn. 74, 192 Atl. 561; 23 R. C. L. (Receivers) 76,102.) A number of cases found in the Federal Reporter hold likewise. Among them are *In re McAllister-Mohler Co. supra,* distinguishing *Smith* v. *Goodman, supra; Spillinger* v. *Miller Co.* 80 Fed. (2d) 88. We regard it as unnecessary to cite the others. The *Gardiner case, supra,* holds there can be a recovery where the lease contains a provision for damages in case of breach of a

covenant to pay rent, but where the lease contains no such provision the claim is not provable. It distinguishes the *Filene case, supra,* on the ground that the lease in the *Filene case* contained a provision for damages. This distinction made by the *Gardiner case* is pointed out in *Bloch* v. *Bell Furniture Co. supra,* and it also distinguishes the *Filene case*.

The general rule governing the provability of claims against an estate in receivership is that claims on which no right of action exists at the time of the appointment of a receiver cannot be proved against the assets in his hands, and that the receiver of the lessee does not, because of his accepting the trust and receiving the assets, become the assignee of the lessee and, as such, responsible for rent reserved in the lease, unless he elects to take over the lease or to do some act which is equivalent to such election. (23 R. C. L. (Receivers) 76, 102.) The principal reason advanced by the courts which disallow the claim for future rent, or for damages for non-payment thereof, is that unaccrued rent is not a present obligation payable in the future, *("Debitum in praesenti solvum in futuro,")* but is a contingent claim, which may or may not become an enforceable obligation, depending upon many circumstances with reference to the relation of landlord and tenant. (*Cooper* v. *Casco Mercantile Co. supra; Wood* v. *Partridge,* 11 Mass. 488.) The rule and its reason find support in bankruptcy cases. (*Manhatten Properties, Inc.* v. *Irving Trust Co.* 291 U. S. 320, 78 L. ed. 824; *In re Service Appliance Co. supra.*) In *Cooper* v. *Casco Mercantile Co. supra,* it is pointed out that at common law a rent covenant did not give rise to a present obligation to render performance in the future, as did, for example, a promise to pay in installments for goods purchased, and no obligation was held to exist until the rent day. A failure to pay rent when it accrued did not accelerate the unpaid rent in the absence of a provision in the lease to that effect. There was no doctrine at common law that a material breach of the lease

would give rise to a cause of action for breach of the entire lease, and there was, *a fortiori*, no doctrine of anticipatory breach of a lease. These common law rules left a definite mark on modern law and in a majority of common law jurisdictions the decisions are grounded upon these principles. The courts have generally declined to apply the doctrine of anticipatory damages to contracts for the use of land. In order to have it applied to such contracts resort has been had to the introduction into leases of provisions having that effect. In the light of the rule and its reasons, and with the holdings in a majority of other jurisdictions, our conclusion is that the chancellor correctly denied the claims for damages on account of rent accruing after disaffirmance of the lease. This eliminates appellee Lawson's contention in this court that she is entitled under the lease to seven per cent interest per annum on such rent. Moreover, the second amended intervening petition contains no prayer for such interest.

The only provision of the lease under which appellee Lawson could maintain a claim for interest on money paid out by her is one providing for interest on money paid out by her for "taxes, rates, assessments, water rates or other charges" upon the premises. This cannot be said to include interest on money paid for alterations of the building or a real estate agent's commission.

There is a distinction between the power of a receiver to elect not to bind the receivership by existing executory contracts and his power to annul such contract. He had no power to do any act which will impair the obligation of a binding contract so far as the parties thereto are concerned. (*Chemical Nat. Bank* v. *Hartford Deposit Co.* 156 Ill. 522; 23 R. C. L. (Receivers) sec. 80.) In *Bloch* v. *Bell Furniture Co. supra*, the New Jersey court affirmed a decree denying the claim for damages, but did so "without prejudice to the right of the claimant, if it should appear that the proceeds in the hands of the receiver

will exceed the amount required for the payment of administration expenses and allowed claims, to make application that either it be secured against rent losses before any distribution to stockholders, or payment of its rejected claim be made to the extent of such excess funds." This was stated to be on the ground that if there is such a surplus the opportunity made possible for a corporation to escape the obligation of a lease that has become burdensome and yet retain for its stockholders a division of its assets seems to be highly inequitable. This doctrine was followed by the same court in the later case of *Greenspan & Greenspan Co.* v. *Georke Co.* 112 N. J. Eq. 391, and in *People* v. *Metropolitan Surety Co.* 205 N. Y. 135, where it was held that a claim which was merely contingent when dissolution proceedings were begun was not provable. In 23 Ruling Case Law (Receivers,) 102, it is said: "The disallowance of a claim against the assets of an insolvent corporation in the hands of a receiver on the ground that it matured after the appointment of the receiver will not affect the right of the claimant to his proper dividend from any surplus that may remain after all claims in existence, when the action for dissolution was commenced, are paid and discharged." We are impressed with the logic and justness of this doctrine. As was said in *Bloch* v. *Bell Furniture Co. supra*: "It could hardly have been the intention of the lawmakers to distribute the surplus of assets, or, in other words, return capital, to stockholders of the company,—that is, to those who deliberately ventured for gain, and pledged their capital for the security of those who were induced to deal with them,—and at the same time disregard those who, dealing with those stockholders upon the faith of that security, became justly entitled to damages for breaches of contracts occasioned by an insolvency and suspension that the very capital relied upon was intended to ward off. Such distribution would be the protection of capital against its just liability."

If it should develop that the proceeds in the hands of the receiver will exceed the amount required for payment of administration expenses and allowed claims, appellant should have the right to be secured against rent losses before any distribution to stockholders, or that payment of her rejected claim be made to the extent of such excess funds. The decree of the circuit court is modified so as to be without prejudice to her right to make application to the court for such purpose. Accordingly, the judgment of the Appellate Court is reversed. The decree of the circuit court, as so modified, is affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court modified and affirmed.*