THE ADVERTISING CHECKING BUREAU, INC., Plaintiff-Appellant, *v.* CANAL-RANDOLPH ASSOCIATES *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 81-1959

Opinion filed October 20, 1981.

Robert W. Bergstrom, Ronald W. Teeple, and John L. Leonard, all of Bergstrom, Davis & Teeple, of Chicago, for appellant.

Edwin A. Rothschild, Harold C. Hirshman, and Robert H. Oakley, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff corporation is a tenant in a Chicago office building. Defendants own the building. Plaintiff seeks to enjoin defendant landlord's planned relocation of the corridor leading to plaintiff's offices. The trial court granted summary judgment for defendants. Plaintiff appeals, contending that unresolved issues of fact should have precluded summary judgment. Plaintiff also contends that the trial court erred in denying its motion for a temporary restraining order.

Plaintiff, The Advertising Checking Bureau, Inc., operates a service involving the checking of advertising copy in newspapers. Plaintiff's Chicago operation employs approximately 100 people. In May of 1980, plaintiff signed a 15-year lease for office space in the Canal-Randolph Building in Chicago. The building is owned by Canal-Randolph Associates, a limited partnership. Canal-Randolph Associates Corporation is a general partner in the limited partnership. Both entities have been joined as parties defendant in this action.

Plaintiff's offices occupy approximately one-third of the 13th floor of the Canal-Randolph Building. A straight corridor, approximately 8 feet wide and 50 feet long, leads directly from a bank of elevators to the door to plaintiff's offices. Space on the west side of this corridor is leased to Western Union. A similar space on the east side of the corridor has been unoccupied for some time. Plaintiff's lease agreement contains a right of first refusal with respect to the unoccupied space. In March of 1981, the landlord notified plaintiff of an offer to rent the unoccupied space. The

landlord's written notice advised that Western Union had offered $11 per square foot for 2795 square feet of the unoccupied space. Plaintiff did not exercise its right of first refusal.

On June 10, 1981, the landlord notified plaintiff that the corridor leading to its offices would be relocated to allow for Western Union's expansion. Western Union, which already occupied the space west of the corridor, desired a contiguous space for its expanded operations. As a result, Western Union's leasehold would cover the corridor and most of the previously unoccupied space. A new corridor was to run along the boundary of the previously unoccupied space.

Plaintiff immediately objected to the proposed configuration. The new route to the elevators would be significantly longer (approximately 150 feet instead of 50 feet) and somewhat narrower (6 feet at the narrowest point instead of 8 feet) than the existing passageway. Plaintiff also noted that the new corridor would pass by an equipment room and public rest rooms. The landlord, although it remained firm in its intention to eliminate the existing corridor, offered to place signs directing visitors to plaintiff's offices. Plaintiff, unsatisfied with the landlord's proposal, initiated this litigation.

Defendants, in moving for summary judgment, relied on a clause in the lease agreement. Paragraph 32 of the agreement states, in part:

> "Landlord shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefor, to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the Building."

Defendants also point to paragraph 16 in the agreement, which states:

> "All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Landlord and Tenant."

■■ Summary judgment for a defendant is appropriate if there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law. (See Ill. Rev. Stat. 1979, ch. 110, par. 57.) The interpretation of a lease is a question of law when the terms are plain and unambiguous. (See *Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 575, 414 N.E.2d 1152.) We find the clauses in question unambiguous and conclude that the matter was appropriate for summary judgment. Similarly, we find that the "issues of fact" advanced by plaintiff are not genuine or material, since the questions so raised are resolved by the terms of the lease.

■■ "An ambiguous contract is one capable of being understood in more senses than one; an agreement obscure in meaning, through indefiniteness

of expression, or having a double meaning." (*First National Bank v. Victor Comptometer Corp.* (1970), 123 Ill. App. 2d 335, 341, 260 N.E.2d 99.) Plaintiff finds ambiguity in the use of the word "public" in section 32 of the lease-agreement. Plaintiff contends that the existing corridor is not public, inasmuch as it leads only to plaintiff's offices and is not generally used except by plaintiff's employees, customers and deliverymen. At the very least, plaintiff asserts, the term is ambiguous and extrinsic evidence should be admitted to clarify the matter. While it is true that plaintiff has been able to postulate two conflicting meanings for the term "public * * * corridor," it does not follow that plaintiff's assertion of ambiguity is dispositive. Whether ambiguity exists is a question of law for the court. (*Pioneer*, at 575.) The trial court found paragraph 32 unambiguous. In light of the ordinary meaning of the word "public" and looking at the word in the context of paragraph 32, we do not doubt that "public" refers to the nonleased portions of the building reserved for the common use of the tenants and others. This accurately describes the corridor in question.

■■ Plaintiff also argues that paragraph 32 is ambiguous because it could be construed to allow outlandish modification in the public areas of the building. Plantiff suggests that the clause could be cited as justification for narrowing the corridor to 1 foot in width. Following the definition quoted above, we believe that the possibility that language may be stretched, with fanciful results, does not indicate ambiguity. If the landlord adopted an unreasonable construction of paragraph 32 and attempted such an outrageous modification of the corridor, the result might well amount to a constructive eviction (see generally *John Munic Meat Co. v. H. Gartenberg & Co.* (1977), 51 Ill. App. 3d 413, 366 N.E.2d 617) or a destruction of the tenant's easement for ingress and egress (see *The Fair v. Evergreen Park Shopping Plaza, Inc.* (1954), 4 Ill. App. 2d 454, 464-65, 124 N.E.2d 649). Those misdeeds have their remedies, but the fact that a landlord might attempt misconduct under color of the lease does not make the lease ambiguous. Finding no ambiguity, we will not resort to rules of construction. (See *Pioneer*, at 575; *Nerone v. Boehler* (1976), 34 Ill. App. 3d 888, 891, 340 N.E.2d 534.) Thus there is no need to accept plaintiff's invitation to construe the instrument against the lessor and in favor of the lessee, since this principle is a rule of construction. See *Liquorama, Inc. v. American National Bank & Trust Co.* (1980), 86 Ill. App. 3d 974, 977, 408 N.E.2d 373.

Plaintiff contends that the circumstances surrounding the formation of the lease agreement reveal an understanding that the corridor layout be maintained. Evidence on this point is immaterial for two reasons. Such evidence is extrinsic, and may not be considered without a finding of ambiguity. (See *Pioneer*, at 575; *Nerone*, at 891.) Furthermore, there is no

reason to ignore the plain language of the integration clause in the lease: "All understandings and agreements * * * are merged in this contract, which alone fully and completely expresses the agreement between Landlord and Tenant."

■■ Plaintiff also contends that the floor plan, which was appended to the lease and shows the corridor in its original configuration, conveys the understanding that the details shown on the floor plan are not subject to change. Any such inference from the attachment of the floor plan to the lease, however, is overcome by the express language of paragraph 32, which clearly states that the location of the corridor is subject to change.

Plaintiff argues that three affidavits submitted in response to defendants' motion for summary judgment raise issues of fact. One affidavit was that of Victor May, who described himself as a private investigator and an expert in building security. May stated that the proposed corridor configuration, since it was longer and passed by rooms where malefactors might lurk (*i.e.*, the rest rooms and equipment room), posed a personal security risk to plaintiff's employees and visitors. Another affidavit was that of Irving Addis, an architect. Addis evaluated the corridor change from a fire safety viewpoint. Addis noted that there are two exit stairways available to plaintiff's employees. One is located in the northwest corner of plaintiff's premises and the other is located near the bank of elevators. Addis concluded that the increased distance to the second stairway would constitute a fire safety hazard to those employees who attempted to exit by that stairway. A third affidavit was provided by Richard Pauls, plaintiff's vice-president. Pauls expressed opinions regarding the personal security and fire safety aspects of the proposed corridor. His lengthy affidavit also traced the history of the lease negotiations.

■■ Defendants filed no affidavits in response. Plaintiff argues that since its affidavits are uncontradicted, they must be taken as true. (See *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) Truth, however, is not the same as relevance. The purpose of affidavits given in connection with a motion for summary judgment is to demonstrate the evidence that will be offered at trial and so aid the court's determination of whether a material issue of fact exists. (*Anderson v. Dorick* (1975), 28 Ill. App. 3d 225, 227, 327 N.E.2d 541.) Here, the affidavits related to fire and personal safety. These issues might be material to other landlord-tenant disputes, but are immaterial to the interpretation of paragraph 32 of the lease.

■■ Plaintiff also contends that the landlord violated paragraph 17 of the lease rider, which contains plaintiff's right of first refusal. Paragraph 17 states, in part:

"If Landlord shall receive a bonafide offer to lease [the unoccupied space adjacent to plaintiff's premises] during the term of the Lease which Landlord is willing to accept ("Offer"), written notice of the Offer (and the material terms thereof) shall be given to the Tenant. * * * If Tenant does not notify Landlord that it has exercised its Right within such ten day period * * * the Right shall be extinguished and of no further force and effect with respect to any further leasing of the Space."

Under this provision, plaintiff had a right to see the material terms of Western Union's offer for any part of the "approximately 4000 square feet" of unoccupied space. Plaintiff was notified of the square footage and the price. Plaintiff was not notified of the exact configuration of Western Union's prospective leasehold. Plaintiff neither exercised its right of refusal nor asked for clarification, and the right was extinguished when the landlord accepted Western Union's offer. Furthermore, we note that the right of first refusal did not include the existing corridor, since the right applied only to a walled-off area shown as "unoccupied space" on the floor plan. In view of this, the landlord was not required to disclose its plans for the corridor. Given the circumstances, we find that the notice provided was adequate and defendants did not violate paragraph 17 of the lease rider.

● 7 Plaintiff argues that the new corridor amounts to a constructive eviction. Paragraph 32 of the lease states that the relocation of a corridor will not be deemed a constructive eviction, but, even ignoring this language, the facts do not support plaintiff's contention. Generally, there is no constructive eviction unless the tenant abandons or surrenders the premises. (*John Munic Meat Co.*, at 416.) Additionally, the act of the landlord must be of a grave and permanent character and done with the intention of depriving the tenant of enjoyment of the premises. (*Gillette v. Anderson* (1972), 4 Ill. App. 3d 838, 842, 282 N.E.2d 149.) We do not believe that the landlord's acts in the instant case are of such a nature.

■■ Plaintiff also claims that the landlord has breached the lease's covenant of quiet enjoyment. In *Brown v. Lober* (1979), 75 Ill. 2d 547, 553, 389 N.E.2d 1188, our supreme court stated that this covenant is breached only when a paramount titleholder effects an actual or constructive eviction. As noted above, no eviction has occurred. Plaintiff states that the *Brown* case is inapposite, since the covenant of quiet enjoyment in that case was part of a conveyance by warranty deed, rather than a lease. There is no valid basis for the distinction plaintiff argues. A lease is also a conveyance (see *People v. Shedd* (1909), 241 Ill. 155, 165, 89 N.E. 347), and the covenant of quiet enjoyment in a lease protects the same rights as the covenant of quiet enjoyment in the sale of property. Compare *Berrington*

*v. Casey* (1875), 78 Ill. 317, 319, with *Biwer v. Martin* (1920), 294 Ill. 488, 496, 128 N.E. 518.

■■ Plaintiff also cites numerous cases, most of them from other jurisdictions, to support its claim of an easement in the subject corridor. There is no doubt that plaintiff, as a 13th floor tenant, has an easement for ingress and egress over portions of the building (see *The Fair*, at 464-65), but paragraph 32 of the lease clearly makes that easement movable. We find that the proposed corridor will not destroy plaintiff's easement.

■■ Plaintiff's second contention on appeal is that the trial court erred in denying its motion for a temporary restraining order. The denial of a temporary restraining order is a matter within the sound discretion of the trial court, and its decision will not be upset on appeal without a finding of an abuse of that discretion. (See *Board of Education v. Springfield Education Association* (1977), 47 Ill. App. 3d 193, 196, 361 N.E.2d 697.) The record on appeal shows no evidence of an abuse of discretion. On the contrary, the trial court expedited matters to a commendable degree. The motion for a temporary restraining order was filed on July 13, the same day defendants filed their motion for summary judgment. The trial court ruled on the summary judgment motion on August 3. It does not appear that the landlord began relocating the corridor during that interval. On August 12, this court entered an order preserving the status quo pending disposition of the appeal. Under these circumstances, there was no need for the temporary restraining order and no abuse of discretion in its denial.

Accordingly, the order granting summary judgment to defendants and the order denying plaintiff's motion for a temporary restraining order are affirmed.

Judgment affirmed.

HARTMAN, P. J., and DOWNING, J., concur.