**INFINITY BROADCASTING CORPO-RATION OF ILLINOIS,**
Plaintiff–Appellant,

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA,**
Defendant–Appellee.

No. 87–2341.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1988.

Decided March 9, 1989.

Rehearing and Rehearing In Banc Denied April 6, 1989.

Donald C. Clark, Jr., McDermott, Will & Emery, Chicago, Ill., for plaintiff-appellant.

Thomas F. Geselbracht, Rudnick & Wolfe, Chicago, Ill., for defendant-appellee.

Before CUDAHY, EASTERBROOK and MANION, Circuit Judges.

MANION, Circuit Judge.

Infinity Broadcasting Corporation of Illinois (Infinity) sued its landlord, the Prudential Insurance Company of America (Prudential) for declaratory relief. Infinity claimed that Prudential's construction of a 64–story building next to the building in which Infinity was a tenant would distort and destroy a significant amount of Infinity's radio transmissions, and that such action constitutes (1) a breach of the implied covenant of quiet enjoyment, and thus a breach of Infinity's lease and license; (2) constructive eviction; and (3) an anticipatory repudiation of the lease and license. The district court dismissed Infinity's complaint and amended complaint under Fed.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. Infinity appeals these dismissals, and we affirm.[1]

## I.

Prudential owns a 41–story office building named Prudential Plaza. In 1971 Plough Broadcasting Company obtained a lease for space on the fortieth floor of the building, and a license to install and use a broadcast antenna on the tower of the building. In 1981 Plough exercised its right for a ten-year extension, and in 1984 assigned that lease and license to Infinity. The lease extended through May 31, 1991, exclusively for the operation of a radio broadcast station.

Prudential announced in March of 1985 that it would build a 55–story office building, named Two Prudential Plaza, next to the original Prudential Plaza. It later increased Two Prudential Plaza's planned height to 64 stories. Infinity informed Prudential that the building would block its radio frequencies, distorting reception for some listeners and preventing reception for some others.[2] After some delay, Prudential denied any obligation to protect the broadcast signals, but stated a willingness to meet with Infinity to discuss the problem. Although the parties did meet, they were unable to resolve their differences, and Infinity filed this action.[3]

On February 5, 1987, Judge Nordberg, in a well-considered opinion, dismissed Infinity's original complaint pursuant to Fed.R.

---

1. The following facts are based on those pleaded in Infinity's complaints and the lease agreement attached as an exhibit, and will be accepted as true for the purpose of evaluating the Rule 12(b)(6) motion to dismiss. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

2. Infinity's radio station, 104.3 FM, WJMK, had an audience of 584,500 listeners per week on April 2, 1986. A study commissioned by Infinity revealed that the building would partially block Infinity's signals for up to .37 square mile.

3. Infinity has also, in the meantime, moved most of its operation to Sears Tower.

Civ.P. 12(b)(6). On July 16, 1987, Judge Nordberg dismissed Infinity's amended complaint on the same basis. On appeal, Infinity presents the same three claims it raised to the district court: (1) breach of the covenant of quiet enjoyment; (2) constructive eviction; and (3) anticipatory repudiation.

■ Prudential initially challenges Infinity's standing to sue. Since Prudential's original contract was with Plough, and since Prudential did not consent to Plough's assignment to Infinity, Prudential alleges that Infinity lacks standing. We disagree. Even though the lease provision required such consent, Infinity still has a basis to file suit. As the district court found, the lease does not absolutely prohibit all assignments, and Prudential did not object to the assignment. Indeed, Prudential has accepted rental payments of at least $24,000 per year from Infinity and treated Infinity as a tenant since that assignment. Prudential therefore cannot now claim Infinity lacks standing to sue under the lease. *Woods v. North Pier Terminal Company,* 131 Ill.App.3d 21, 86 Ill.Dec. 354, 356, 475 N.E.2d 568, 570 (1st Dist.1985) (if landlord does not treat assigned leasehold as void, restrictions on assignment are deemed waived); *Kaybill Corporation, Inc. v. Cherne,* 24 Ill.App.3d 309, 320 N.E.2d 598, 607 (1st Dist.1974) (landlord waived his right to prohibit assignment, and gave implied consent, by accepting rent from assignee).

After determining that Infinity had standing, the district court concluded that there was no cause of action under any of Infinity's three theories which would constitute a real controversy warranting declaratory relief, and therefore granted Prudential's motion to dismiss. When reviewing a trial court's dismissal of a claim under Fed.R.Civ.P. 12(b)(6), we assume the well-pleaded allegations of the complaint are true. *First Interstate Bank of Nevada v. Chapman & Cutler,* 837 F.2d 775, 776 (7th Cir.1988). A plaintiff fails to state a claim under Rule 12(b)(6) only if he "can prove no set of facts upon which relief may be granted." *Id.* (citing *Conley v. Gibson,*

355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). All reasonable inferences must be drawn in the light most favorable to the plaintiff. *Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir.1987).

■ Granting a declaratory judgment is within the district court's sound discretion. *Cunningham Brothers, Inc. v. Bail,* 407 F.2d 1165, 1169 n. 3 (7th Cir.), *cert. denied,* 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969). We may only substitute our own judgment if the exercise of that discretion in denying the declaratory relief was "erroneous." *Id.* A plaintiff will have raised a cause of action for a declaratory judgment if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk,* 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (quoting *Maryland Casualty Company v. Pacific Coal and Oil Company,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

## II.

### A. Covenant of Quiet Enjoyment

■ The primary issue in this case is whether the interference with Infinity's radio waves from the construction of Two Prudential Plaza constitutes a breach of the covenant of quiet enjoyment. Such a covenant is implied in all leases in Illinois. *Blue Cross Association v. 666 North Lake Shore Drive Associates,* 100 Ill.App.3d 647, 652, 56 Ill.Dec. 190, 193, 427 N.E.2d 270, 273 (1st Dist.1981). The covenant is breached when the lessor substantially interferes with the lessee's "use and enjoyment of the premises." *Id.*

■ Infinity's claim is essentially one for access to the air space surrounding Prudential Plaza. To find that Prudential has interfered with Infinity's right to quiet enjoyment of the premises, we would in effect have to find that Infinity has a right to the use of the air waves extending across the space on which Two Prudential Plaza is

being constructed, at least as against use by Prudential. As there is no such easement expressly granted in the lease, we would have to find an implied easement for radio wave transmission with which Prudential could not interfere. The Illinois courts have not directly addressed the issue of easements for radio frequencies, but the Illinois Supreme Court has recognized an analogy between television waves and easements for light and air. *People ex rel. Hoogasian v. Sears, Roebuck and Company*, 52 Ill.2d 301, 287 N.E.2d 677, 678, *cert. denied*, 409 U.S. 1001, 93 S.Ct. 323, 34 L.Ed.2d 262 (1972). We believe such an analogy is equally applicable here. Although the Illinois case law in this area is sparse, it does show that Illinois courts will not imply an easement for light or air in a lease.

■ The district court's decision relies primarily on *Keating v. Springer*, 146 Ill. 481, 34 N.E. 805 (1893), and *Baird v. Hanna*, 328 Ill. 436, 159 N.E. 793 (1927), and we agree that these cases provide the most relevant Illinois precedent. In *Keating*, the plaintiff-tenant needed strong light for his marble manufacturing and polishing business. The lease contained an express covenant for the unobstructed passage of light, and therefore the Illinois Supreme Court allowed evidence regarding the building by the landlord of a structure which would block light from the tenant's windows. However, the court based its holding on the express covenant, and went on to clarify its decision, stating that an implied easement for air and light is

> inapplicable in a county like this, where the use, value, and ownership of land are constantly changing. Air and light are the common property of all.... The prevalent rule in the United States is that an easement in the unobstructed passage of light over an adjoining close cannot be acquired by prescription ... [and will not be implied] from the necessity of such easement to the convenient

enjoyment of the property.... It follows that a landlord will not be liable for obstructing his tenant's windows by building on the adjoining close, in the absence of any covenant or agreement in the lease forbidding him to do so.

34 N.E. at 807.[4]

In *Baird*, the owner of two lots sold them to two different people. One lot contained a building and photography business. The other lot's owner then leased the lot, and the lessee began constructing a building. The Illinois Supreme Court held that the buyer of the lot with the photography business could not get an injunction against the tenant of the other premises based on the need for light for his business, reaffirming that "the law of implied grants and implied reservations shall not be applied to easements for light and air." 159 N.E. at 794. The court reasoned that

> [t]he simplest rule, and that best suited to a country like the United States, in which changes are continually taking place in the ownership and in the use of lands, is that no easement of light can be acquired without express grant on an interest in, or covenant relating to, the lands over which the right is claimed.

*Id.*

Infinity's brief relies heavily upon *Bloomington Lodge v. Roland*, 217 Ill. App. 435 (3d Dist.1920), for the proposition that an easement for light and air, and thus by analogy an easement for radio waves, can be implied here. In that case, the owner of a building and lot leased the premises to a party who in turn sublet the third-floor. The sublessee then sublet to Bloomington Lodge. The original lessee then assigned the entire lease to Roland, who began to build an addition on the vacant lot adjacent to the building, which would block air and light from the third floor lodge. The court found that the lodge leased the third floor "as it was then constructed, including the right to have

---

4. We disagree with Infinity's assertion that *Keating* is no longer good law in Illinois, and its claim that the above-quoted passage was unsupported dicta. *Keating* was followed and quoted in *Baird*, discussed below. Moreover, both *Keating* and *Baird* are Illinois Supreme Court cases, whereas most of the cases Infinity relies on were state appellate court opinions, many of which were decided before *Baird*.

light, and air through the windows at the rear of that floor." *Id.* at 440. It held that because the original lessee of the lot was burdened with that easement, that burden carried over to any assignment of the lot as well.

*Bloomington Lodge* does not require an implied easement in the present case. *Bloomington Lodge* primarily stands for the proposition that an assignee's rights are limited to those granted in the assigned lease, and that it therefore cannot change the premises in any way that would be detrimental to a tenant or subtenant. Prudential is the owner of the lot and not the assignee, so it is not relegated to the rights granted in an assignment, and not subject to any rights granted to a pre-existing subtenant. More significantly, even if *Bloomington Lodge* does suggest the validity of implied easements for light and air, that case was an appellate court decision handed down before the Illinois Supreme Court decided *Baird,* which clearly rejected implied easements for light and air. Finally, whatever the intent of the parties in *Bloomington Lodge,* we do not believe Prudential and Infinity could reasonably have expected the property surrounding Prudential Plaza to remain undeveloped. The parties' expectations and intentions are important when interpreting rights and obligations under a lease.

Infinity claims that the lease provision limiting its use of the premises exclusively to radio broadcasting implies an absolute prohibition on action by Prudential which would interfere with that use, and therefore that the parties did intend an implied right of passage for Infinity's radio signals. But we agree with the district court that this lease provision

> merely acknowledges the use to which the tenant must put the leased premises, and no provision of the lease states that the tenant shall have an easement for the passage of radio waves over Prudential's adjoining property.... The ownership and development of Chicago skyline property is constantly changing. Plough and Infinity could not have reasonably expected at the time of the lease and assignment, respectively, that the ex-

tremely valuable land north of the Prudential Building would remain undeveloped forever, or during the twenty-year term of the lease and its extension.

■ We believe it is sound policy to put the obligation upon the prospective commercial tenant to ensure protection for the specific needs of his enterprise. Here it was Infinity's duty to bargain for any unique provisions effecting the transmission of radio waves, or to instead bargain for a reduced rent or liquidated damages clause. An easement for unobstructed radio waves is a lease term which should be negotiated into the lease; a court should not have to read in such a provision in hindsight.

Moreover, the district court was justifiably concerned with the consequences such an easement would have on land development. Prohibiting Prudential from interfering with Infinity's radio frequencies would greatly restrict Prudential's ability to construct the equivalent of Two Prudential Plaza anywhere in the city. Setting such a precedent would also inhibit free land development by any lessor having a radio or television company lessee. We conclude that Illinois law requires the parties to negotiate the terms of such restrictions on their own, and incorporate them into the lease. We therefore uphold the determinations of the district court that no easement for the unobstructed passage of radio waves can be implied here, and that Prudential did not breach the covenant of quiet enjoyment.

### B. Constructive Eviction

Infinity's next claim is that Prudential will constructively evict it from its lease space by building Two Prudential Plaza. The district court, based on its examination of the complaint, determined that Infinity could not successfully claim constructive eviction because it had not abandoned the premises. *RNR Realty Inc. v. Burlington Coat Factory,* 168 Ill.App.3d 210, 119 Ill. Dec. 17, 23, 522 N.E.2d 679, 685 (1st Dist.) ("Constructive eviction cannot exist where the tenant does not surrender the proper-

ty," at least within a reasonable time), *appeal denied,* 121 Ill.2d 586, 122 Ill.Dec. 446, 526 N.E.2d 839 (1988); *see also Advertising Checking Bureau, Inc. v. Canal–Randolph Associates,* 101 Ill.App.3d 140, 56 Ill.Dec. 634, 639, 427 N.E.2d 1039, 1044 (1st Dist.1981) (tenant must abandon or surrender the premises before claiming constructive eviction). Infinity claims its amended complaint sufficiently alleged abandonment, as it stated that it was moving its facilities to Sears Tower. It also claims that Prudential's actions were "of a grave and permanent character done with the intention of depriving [Infinity] of the full enjoyment of the premises," *RNR Realty,* 119 Ill.Dec. at 23, 522 N.E.2d at 685. Thus, Infinity argues that it has sufficiently alleged both requirements of constructive eviction. *Id.*

■ At the first hearing before the district court, Infinity had not vacated the premises, and Judge Nordberg concluded that Infinity was only seeking an advisory opinion in the event it did vacate. At that point he correctly declined to render an advisory opinion and found that "there is not a substantial controversy over whether Infinity has or will be constructively evicted of sufficient immediacy and reality to warrant such a declaration at this time." In his later oral modification the court recognized that for all premises as it had alleged in the complaint. But the court still found no constructive eviction. Citing *City of Chicago v. American National Bank,* 86 Ill.App.3d 960, 42 Ill.Dec. 1, 2–3, 408 N.E.2d 379, 380–81 (1st Dist.1980), the judge found that Infinity's claim did not amount to something of a grave and permanent character indicating the landlord's intent to deprive the tenant of beneficial enjoyment. Judge Nordberg had already determined that the claim for breach of quiet enjoyment lacked merit.

■ We agree. The constructive eviction allegation as structured here is a mere modification of the quiet enjoyment claim. At oral argument counsel confirmed that most of the operation had been moved to Sears Tower, although Infinity continues to use the Prudential office. The move to

what is presently the tallest building in the world ensures an unobstructed transmission for the foreseeable future. It was, however, foreseeable when the lease began in 1971, and certainly when Infinity assumed it in 1984, that buildings taller than 41 floors could obstruct radio waves. With no provision in the lease protecting it, Infinity cannot now claim eviction, constructive or otherwise.

We hold that Judge Nordberg's determination that there was no constructive eviction was supported by Illinois law.

### C. Anticipatory Repudiation

■ Infinity finally claims that Prudential's refusal to make assurances that Two Prudential Plaza would not interfere with Infinity's radio signals constituted anticipatory repudiation of its lease and license. Absent an express provision in the lease, the doctrine of anticipatory repudiation does not apply to leases under Illinois law. *See People ex rel. Nelson v. West Town State Bank,* 373 Ill. 106, 111–12, 25 N.E.2d 509, 512 (1940); *see also Keep Productions Inc. v. Arlington Park Towers Hotel Corporation,* 49 Ill.App.3d 258, 264–65, 7 Ill. Dec. 648, 653, 364 N.E.2d 939, 944 (1st Dist.1977). "An anticipatory breach occurs when a party to an executory contract manifests a definite and unequivocal intent prior to the time fixed in the contract that it will not render its performance under the contract when that time arrives." *Farwell Construction Company v. Ticktin,* 84 Ill. App.3d 791, 39 Ill.Dec. 916, 925, 405 N.E.2d 1051, 1060 (1st Dist.1980).

■ The district court found that Prudential's construction of the office tower did not constitute a breach of the lease. There was certainly no provision for anticipatory repudiation in the lease, which was attached as part of the complaint. Apparently because Prudential did not immediately respond to Infinity's letters regarding the potential obstruction by Two Prudential Plaza, Infinity asserts a repudiation. But Prudential cannot repudiate a provision not present in the lease in the first place. Prudential had no obligation to refrain from building Two Prudential Plaza or to avoid

interfering with Infinity's radio frequencies, and therefore its refusal to assure Infinity it would not so interfere was not a repudiation of any obligation owed to Infinity.

### III.

To protect its radio signals, Infinity, or its predecessor, should have negotiated with Prudential to insert language into the lease that would protect its future broadcasting intentions. This may have cost more and it may have made the lease unacceptable to Prudential. Without that restrictive language, Infinity and its predecessor have been able to operate for most of the period of the extended lease. It is now too late to read into that lease implied language that in hindsight would have been preferable. Infinity has failed to state a claim upon which relief could be granted under any of the above theories. The district court dismissal of Infinity's complaints are therefore

AFFIRMED.

CUDAHY, Circuit Judge, dissenting:

The majority's desire to preclude restraints on land development is the main reason it leaves Infinity uncompensated. By putting the burden of bargaining for specific protections on the prospective tenant, the majority apparently hopes to promote efficient development. But even as a matter of economic efficiency the construction of Two Prudential Plaza imposes costs on Infinity that ought to be recognized. The nature of Infinity's use was carefully defined in the lease and the landlord should

not be free to impair that use with impunity. If Prudential modified the *existing building* in a way that interfered with broadcasting, it would breach the covenant of quiet enjoyment. That Prudential inflicted the same injury by erecting a *second building* on the same tract is a distinction without a difference.[1]

The common sense of the matter is that Prudential bargained to provide Infinity with space for a clearly defined use. Prudential then chose to impair that use to Infinity's damage. Prudential had therefore obtained both the benefit of its bargain in limiting Infinity's use of the space and the benefit of preventing Infinity from using the space in the way specified. I see no merit in ignoring the lease covenants in the name of a wholly unburdened "development." If Prudential can build Two Prudential Plaza without compensating Infinity, its decision to do so will not take account of the full costs of its activity because it will not have to internalize the full costs. The analysis might be different if the rule the majority articulates had been clearly delineated at the time of the bargain, putting Infinity on notice of its need to bargain for specific protections. But Infinity could have quite reasonably relied on the generally understood principle that "[i]n a commercial lease, the covenant [of quiet enjoyment] protects the lessee ... from actions of the lessor that interfere unreasonably with the lessee's ... ability to conduct business." *American Dairy Queen v. Brown–Port Co.,* 621 F.2d 255, 258 (7th Cir.1980).[2]

---

1. *Bloomington Lodge v. Roland,* 217 Ill.App. 435 (3d Dist.1920) is almost exactly the same case. That there was an assignee in that case does not distinguish it; the assignee stood in the shoes of the assignor, and both were burdened by an implied easement. While it is true that *Baird v. Hanna,* 328 Ill. 436, 159 N.E. 793 (1927), was decided subsequently by the Illinois Supreme Court, *Baird* did not address situations involving a direct contractual relationship. *See infra* n. 2.

2. The majority and the district court look to Illinois cases in which there was no direct contractual relationship between the parties. *People ex rel. Hoogasian v. Sears, Roebuck and Co.,* 52 Ill.2d 301, 287 N.E.2d 677, *cert. denied,* 409

U.S. 1001, 93 S.Ct. 323, 34 L.Ed.2d 262 (1972) (no contractual relationship between parties); *Baird v. Hanna,* 328 Ill. 436, 159 N.E. 793 (1927) (original owner of two lots sells them to two different people, one of whom objects to other buyer's subsequent use of land). Obviously, in the absence of such a relationship, it is necessary to ask whether an obligation arose in some other way—as, for example, through an implied easement. However, here there is a direct contractual relationship, and there is no question that Infinity's lease with Prudential entitled it to a covenant of quiet enjoyment protecting it, at the very least, against interferences by Prudential.

In any event, it was not necessary to block construction of Two Prudential Plaza—or to impede development—in order to grant Infinity appropriate relief. At the very least, Infinity was entitled to some reduction in rent or damages when its lease and license were rendered completely useless by Prudential's activities.

I therefore respectfully dissent.