YVONNE APPLEGATE, Plaintiff-Appellee, *v.* INLAND REAL ESTATE CORPORATION, Defendant-Appellant.

Second District   No. 81—866

Opinion filed October 18, 1982.—Rehearing denied November 18, 1982.

Law Offices of Harlene G. Matyas, of Chicago, for appellant.

Lehrer & Flaherty, of Wheaton, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Inland Real Estate Corporation, the defendant, appeals from a judgment holding that it had constructively evicted the plaintiff, Yvonne Applegate, from an apartment, awarding the lessee double her security deposit plus attorney fees and costs (Ill. Rev. Stat. 1981, ch. 80, par. 101), and denying Inland's counterclaim seeking damages for breach of the lease.

On October 28, 1980, plaintiff signed the lease for the term November 1, 1980, through October 31, 1981. She tendered a security deposit of $335, equal to one month's rent. At this time plaintiff asked Mary Clevenger, the building manager, if the apartment had any problem with roaches, because she didn't want to move in if so. According to plaintiff, Clevenger said that she hadn't heard anything about any roaches. Betsy Turnquist, a friend of plaintiff's who had planned to move in with her, testified that Clevenger said that the apartment didn't have any kind of bugs. Clevenger testified at first

that she could not remember whether the three had discussed the possible roach problem, but later testified that she told plaintiff that there was no problem.

Plaintiff and Turnquist, along with Clevenger, had inspected the apartment several days before the signing. Plaintiff testified that the apartment then was "filthy," with broken baseboards, considerable amounts of dirt, scuff marks, and a couple of dead cockroaches, but that Clevenger told her during the inspection that it would be fixed before she moved in. Clevenger testified that she saw nothing wrong with the apartment at the time, or when she inspected it by herself two or three days before plaintiff moved in. Clevenger gave plaintiff permission to move in early without paying extra rent and plaintiff and Turnquist moved in on October 29. At this time a maintenance man who had been working in the apartment during the earlier inspection was still present, and he told them that the apartment was not ready to move in.

As soon as they started bringing in their possessions, plaintiff and Turnquist saw dozens of cockroaches, some of which they sprayed, stamped out, or caught. There was testimony that the roaches started coming out at night in the kitchen, living room, bedroom and bathroom.

Plaintiff testified that she tried to contact Clevenger several times between October 28 and November 1 but could not reach her. She moved out the evening of October 31, before the lease term technically began, thus paying no rent. Plaintiff and Turnquist testified that the problems of the apartment had not been fixed by then except that some work had been done on the front door and a closet.

Clevenger testified that plaintiff told her on November 1 that she was moving out and that Clevenger responded that if there were roaches in the apartment "we would have an exterminator come out the very next time the exterminator was scheduled." She said that plaintiff refused to wait until the exterminator came out. She also testified that she inspected the apartment shortly after plaintiff moved out and found no roaches.

The defendant withheld the security deposit despite plaintiff's requests for its return. Defendant did not succeed in rerenting the apartment until January 1981.

After finding that the plaintiff had been constructively evicted the trial judge also found that the defendant had refused to supply the itemized statement of property damages allegedly caused by plaintiff, as required by the statute (Ill. Rev. Stat. 1981, ch. 80, par. 101) and had failed to return the security deposit. He thus awarded damages in

the amount of $670, twice the security deposit, plus attorney fees and costs of $482. The court denied the defendant's counterclaim for damages.

## I

Defendant argues first that the trial court erred in finding that there was a constructive eviction.

A constructive eviction requires that the landlord have done something of a grave and permanent character with the intention of depriving the tenant of enjoyment of the premises. (*Advertising Checking Bureau, Inc. v. Canal-Randolph Associates* (1981), 101 Ill. App. 3d 140, 146.) The question of whether a tenant has been constructively evicted is one of fact and the decision of the trier of fact will not be reversed unless against the manifest weight of the evidence. (*John Munic Meat Co. v. H. Gartenberg & Co.* (1977), 51 Ill. App. 3d 413, 416.) In *Munic* the court stated:

> "It is not essential that there be an express intention of the landlord to compel a tenant to leave the demised premises or to deprive him of their beneficial enjoyment, since persons are presumed to intend the natural and probable consequence of their acts and, accordingly, acts or omissions of the landlord making it necessary for the tenant to move from the demised premises constitutes a constructive eviction." 51 Ill. App. 3d 413, 416.

While the defendant argues that the roach problem was not permanent or grave enough to justify plaintiff's abandonment of the premises, we conclude that the trial court's finding that dozens of cockroaches in all parts of the apartment which resisted plaintiff's efforts at extermination and defendant's earlier spraying, along with other instances of disrepair to which the plaintiff testified amounted to a constructive eviction, was not against the manifest weight of the evidence pursuant to the *Munic* analysis. See also *Low v. Clifton Dey Properties, Inc.* (1970), 62 Misc. 2d 817, 310 N.Y.S.2d 130, 132; *Ray Realty Co. v. Holtzman* (1938), 234 Mo. App. 802, 808-09, 119 S.W.2d 981, 984; *Delamater v. Foreman* (1931), 184 Minn. 428, 431, 239 N.W. 148,149; Annot., 27 A.L.R.3d 924 (1969).

We reject defendant's argument that plaintiff may not claim constructive eviction because the lease required that any alteration or modification be put in writing. The plaintiff was not attempting to change the terms of the lease, but was moving out on the theory that defendant had breached the lease by making the apartment uninhabitable. Thus, it was the lessor not the lessee who had terminated the

lease by its acts or omissions. We also reject defendant's argument that because the alleged constructive eviction occurred before the beginning of the lease term, defendant owed no duty to plaintiff. The record compels the inference that the problems with the apartment which plaintiff alleged, and the trial court found, existed in full force the evening before November 1 when the lease technically began and would undoubtedly not have disappeared suddenly at the beginning of the lease term. See *Low v. Clifton Dey Properties, Inc.* (1970), 62 Misc. 2d 817, 310 N.Y.S.2d 130, 132.

▇ Defendant next argues that there was no valid constructive eviction because plaintiff gave defendant no notice of the alleged defects constituting the eviction and no opportunity to cure them. It is true that the tenant may not abandon premises before allowing the lessor a reasonable opportunity to remedy the problem. (*Risser v. O'Connell* (1912), 172 Ill. App. 64, 66.) The evidence shows that plaintiff before deciding to vacate did make several attempts to notify defendant of the problems with the apartment which were unavailing because the defendant's agents could not be reached. It is also questionable whether giving defendant a greater opportunity to attend to the problems involved would have helped. It had already made several unsuccessful inspections and sprayings of the apartment, and could promise only that an exterminator could come several days later, if an inspection revealed roaches. Further, defendant was already aware of a potential cockroach problem and of the other problems found within the apartment. The proof suggests that the roach problem was persistent if not permanent and that an opportunity for an attempt to cure would have availed the plaintiff little. We therefore conclude that the notice requirement is not a bar to recovery under the circumstances of this case.

II

We conclude, however, that the trial court erred in awarding plaintiff damages equal to twice her security deposit, plus attorney fees and costs after finding that defendant had refused to supply plaintiff with the damage statement and failed or refused to return her security deposit. The statute provides generally that a lessor of residential real property containing 10 or more units may not withhold any part of a security deposit "as compensation for property damage" unless he has furnished "an itemized statement of the damage allegedly caused to the premises and the estimated or actual cost for repairing or replacing each item on that statement" in the time provided. (Ill. Rev. Stat. 1981, ch. 80, par. 101.) It does not fairly ap-

pear from the record, however, that the defendant was withholding the security deposit for damage to the property but that it was withholding the deposit as a setoff against damages which it considered due based on an alleged breach of the lease. The prohibition of the statute that the lessor "may not withhold any part of the deposit *as compensation for property damage*" (emphasis added) unless certain statutory conditions are met, does not appear to be intended by the legislature to apply other than where a part or all of the security deposit is retained to compensate for claimed property damage. It appears from the transcript of the legislative debate on the bill that the primary concern of the sponsors was with the property damage issue; one legislator suggested that the lessee who breached the lease by moving out early would not be entitled to invoke the statutory remedies; and it does not appear that the legislature has considered the possibility of a constructive eviction, where the lessee vacates and the lessor may well hold a good faith belief that such vacation is a breach of the lease.

■ In view of the clear omission by the legislature to provide for this particular situation involving a constructive eviction and the good faith though unjustifiable withholding of the security deposit for reasons other than property damage, we construe the statute as inapplicable. While we find that the court erred in assessing double damages the plaintiff was entitled to a return of her security deposit and the award of costs, excluding attorney fees under the statute.[1]

### III

■ Since defendant's counterclaim depends on a finding that plaintiff breached the lease and we have concluded that plaintiff was justified in vacating and withholding rent, we affirm the holding of the trial court denying the counterclaim. A constructive eviction relieves a tenant of any duty to pay rent for the period after the eviction. *John Munic Meat Co. v. H. Gartenberg & Co.* (1977), 51 Ill. App. 3d 413, 420.

The judgment of the circuit court of Du Page County finding that plaintiff was constructively evicted from her lease is affirmed. That

---

[1]While we have concluded that the statutory terms appear limited to situations where the lease term has expired and the lessor could only claim property damages as a reason to withhold part or all of the security deposit, we recognize that the provisions for double damages and attorney fees were added to discourage a withholding of deposits for baseless reasons. A similar policy could be said to apply to constructive eviction situations but we believe that this is for the legislature to debate and to state with greater specificity.

portion of the judgment which denied defendant's counterclaim is also affirmed. That portion of the judgment which assessed statutory damages in double the amount of the security deposit withheld and awarded costs which included attorney fees is modified to provide for a return of the security deposit to plaintiff and the assessment of costs other than attorney fees.

Affirmed in part and modified in part.

UNVERZAGT and REINHARD, JJ., concur.