DELL'ARMI BUILDERS, INC., Plaintiff-Appellee and Cross-Appellant, v. MARK JOHNSTON *et al.,* Indiv. and/or d/b/a Rehabilitation Consultants for Industry, *et al.,* Defendants-Appellants and Cross-Appellees.

First District (3rd Division) No. 87—1455

Opinion filed June 22, 1988.

---

Askia Kareem Abdullah, of Oak Park, for appellants.

Michael D. Canulli, of Oak Park, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:
Defendants, Mark Johnston and John Allen, sued individually and/or d/b/a Rehabilitation Consultants for Industry, and Rehabilitation Consultants for Industry, appeal from the trial court's judgment

in favor of plaintiff, Dell'Armi Builders, Inc., on plaintiff's action to recover rent and other damages. Defendants, lessees under two office lease agreements with plaintiff-lessor, appeal the trial court's rulings that they breached the lease agreements and were not constructively evicted when they abandoned the leasehold premises and failed to pay rent after the abandonment. Plaintiff has filed a cross-appeal challenging the trial court's denial of its request for attorney fees.

For the reasons stated below, we affirm the judgment of the trial court.

The record indicates that on January 20, 1984, the parties entered into a written lease for office space located in Oak Park, Illinois, for the period from March 1, 1984, to February 28, 1987. On May 1, 1984, the parties executed a second lease for additional office space in the same building in Oak Park for the period from May 15, 1984, to February 28, 1987. On March 24, 1986, defendants notified plaintiff by letter that they considered themselves to have been constructively evicted from the premises due to a continuous leaky roof and other alleged breaches of the office leases. The letter indicated that defendants would vacate the premises on May 31, 1986.

Documents of record also show that on May 9, 1986, defendants executed a lease for different office space, located in Oak Brook, Illinois, with another lessor, the Vantage Group. Defendants contend that it was only *after* they executed the new lease with the Vantage Group for the premises in Oak Brook that plaintiff repaired the leaky roof on the subject premises. The record indicates that plaintiff repaired the roof on or about May 11, 1986. On June 29 or 30, 1986, defendants vacated the subject premises. Defendants paid rent to plaintiff under the lease up to and including the date they vacated the premises.

Plaintiff's complaint alleges that defendants breached the lease agreements and seeks payments for rent beginning from July 1986 and continuing through the end of the lease term, February 28, 1987. The monthly rent payment provided for in the lease agreements is $2,345.

Defendants assert that plaintiff failed to maintain the premises in good repair, as was required under the leases. Defendants cite the following language contained in both lease agreements.

> "Lessor will cause the halls, corridors and other parts of the building adjacent to the Premises to be lighted, cleaned and generally cared for, accidents and unavoidable delays excepted."

Defendants contend that plaintiff failed to keep the premises in good

repair, as the roof leaked in the office space leased by defendants and in the corridors and common washroom which was used by defendants' employees. Defendants also complained of unclean washroom facilities and problems in the office with heat, which allegedly was excessive sometimes and insufficient at other times. Defendants contend that the conditions complained of rendered the premises untenantable and justified defendants' vacating the premises.

Plaintiff responds that defendants failed promptly to abandon the premises after they complained. Plaintiff also contends that defendants admitted that the premises were in good condition at the time they abandoned the premises.

■■ ■ Constructive eviction is defined as something of a serious and substantial character done by the landlord with the intention of depriving the tenant of the beneficial enjoyment of the premises in accordance with the terms of the lease. (*Applegate v. Inland Real Estate Corp.* (1982), 109 Ill. App. 3d 986, 441 N.E.2d 379.) The court in *John Munic Meat Co. v. H. Gartenberg & Co.* (1977), 51 Ill. App. 3d 413, 366 N.E.2d 617, stated:

> "It is essential that there be an express intention of the landlord to compel a tenant to leave the demised premises or to deprive him of their beneficial enjoyment, since persons are presumed to intend the natural and probable consequences of their acts and, accordingly, acts or omissions of the landlord making it necessary for the tenant to move from the demised premises constitutes a constructive eviction." (*John Munic Meat Co.*, 51 Ill. App. 3d at 416.)

(See also *Kinsey v. Zimmerman* (1928), 329 Ill. 75, 80, 160 N.E.2d. 155.) In other words, the tenant is justified in abandoning the premises, if, as a result of the landlord's breach of his covenant to repair, the leased premises become unfit for the purpose for which they were leased. (*American National Bank & Trust Co. v. Sound City, U.S.A., Inc.* (1979), 67 Ill. App. 3d 599, 385 N.E.2d 144.) The question of whether a tenant has been constructively evicted is one of fact and the decision of the trier of fact will not be reversed unless it is against the manifest weight of the evidence. *Applegate v. Inland Real Estate Corp.* (1982), 109 Ill. App. 3d 986, 441 N.E.2d 379.

■ Further, a constructive eviction discharges the liability of the tenant to pay rent or otherwise comply with the terms of the lease, and he may abandon the premises. (*Automobile Supply Co. v. Scene-In-Action Corp.* (1930), 340 Ill. 196, 172 N.E. 35.) There can be no constructive eviction, however, without the vacating of the premises. *Sloss v. Brockman* (1912), 171 Ill. App. 465; *First National Bank v.*

*Sousanes* (1981), 96 Ill. App. 3d 1047, 422 N.E.2d 188.

▆▆▆▆ Where the landlord is guilty of a breach of his duty which would justify the tenant's abandoning the premises, the tenant is not required to vacate immediately, but is entitled to a reasonable time to do so. (*Automobile Supply Co. v. Scene-In-Action Corp.* (1930), 340 Ill. 196, 172 N.E. 35.) The reasonableness of the delay is usually a question of fact. (*Automobile Supply Co.*, 340 Ill. at 204.) A delay in abandoning the premises might be excused by showing a reliance upon promises of the landlord to correct the defects. The tenant may not abandon the premises before allowing the lessor a reasonable opportunity to remedy the problem. (*Applegate v. Inland Real Estate Corp.* (1982), 109 Ill. App. 3d 986, 441 N.E.2d 379.) Another relevant factor regarding a delay in abandoning the premises is the time required to find a new location. (*American National Bank & Trust Co. v. Sound City, U.S.A., Inc.* (1979), 67 Ill. App. 3d 599, 385 N.E.2d 144.) If the tenant fails to vacate within a reasonable time, then the tenant is considered to have waived the landlord's breach of its covenant. (*Automobile Supply Co.*, 340 Ill. at 203.) The burden of showing a vacation of the premises on account of the landlord's breach of his duty to the tenant under the lease within a reasonable time after such breach is upon the tenant. *Automobile Supply Co.*, 340 Ill. at 203.

▆▆ While the trial court conducted a hearing on the issues raised by the parties, the transcript of trial proceedings is not contained in the record on appeal. An appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error. Defendants have failed to supply the transcript here.

▆▆ In the absence of such a record on appeal, and upon a claim of error, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958.) Any doubts which may arise from the incompleteness of the record will be resolved against the appellant. (*Foutch*, 99 Ill. 2d at 392; *Chicago City Bank & Trust Co. v. Wilson* (1980), 86 Ill. App. 3d 452, 407 N.E.2d 964.) In the absence of a report of proceedings, particularly when the judgment order states that the court is fully advised in the premises, a reviewing court "will indulge in every reasonable presumption favorable to judgment, order or ruling from which an appeal is taken" (*In re Pyles* (1978), 56 Ill. App. 3d 955, 957, 372 N.E.2d 1139, 1141) and must presume that the evidence heard by the trial court was sufficient to support the judgment absent any con-

trary indication in the record (*In re Marriage of Macaluso* (1982), 110 Ill. App. 3d 838, 846, 443 N.E.2d 1).

■■ Illinois Supreme Court Rule 323(a) describes the report of proceedings to be included in the record on appeal. The rule provides, in pertinent part:

> "A report of proceedings may include evidence, oral rulings of the trial judge, a brief statement of the trial judge of the reasons for his decision, and any other proceedings that the party submitting it desires to have incorporated in the record on appeal. The report of proceedings shall include all the evidence pertinent to the issues on appeal." 107 Ill. 2d R. 323(a).

See also Supreme Court Rule 321 (107 Ill. 2d R. 321).

■■ In the instant case there was no report of proceedings filed. Nor is there a bystander's report, which is authorized under Rule 323(c) (107 Ill. 2d R. 323(c)). Further, appellants failed to file an agreed statement of facts, which is authorized by Rule 323(d) (107 Ill. 2d R. 323(d)). The record contains the complaint, answer, documents relating to a preliminary motion, and the trial court's final judgment order. In addition, the record contains plaintiff's affidavit of attorney fees and costs, documents relating to defendants' motion for reconsideration of judgment and/or to vacate the judgment or for a new trial, and the parties' notices of appeal and cross-appeal. We note that defendants and plaintiff, however, have attached to their briefs a number of documentary exhibits admitted into evidence at trial. We have reviewed these documents in detail in order to glean from them pertinent evidence considered by the trial court and to aid us in determining whether the trial court's decision was contrary to the manifest weight of the evidence.

The copies of the documents attached to defendants' brief, which were the exhibits admitted at trial, show that the earliest documented complaint by defendants to plaintiff regarding a leaky roof is February 4, 1986. Defendants also complained of a leaky roof on February 18, 1986, March 20, 1986, and March 24, 1986. On March 31, 1986, defendants reiterated their intent to vacate the premises. On April 1, 8, and 15, 1986, defendants complained again of a leaky ceiling.

Further, defendants included exhibits dated as early as March 6, 1985, which show that the Village of Oak Park inspected the premises and found that the roof leaked and requested plaintiff to make necessary repairs. On April 8, May 30, and July 10, 1985, the Village of Oak Park sent letters to plaintiff indicating that its inspection of the premises showed there were continuing problems with a leaky

roof and damaged ceiling tiles. On a date which is unclear due to the copy quality of the document attached to defendants' brief, the Village of Oak Park issued a formal building code violation regarding the subject premises due to a leaky roof.

The exhibits attached to defendants' brief also include letters to defendants from plaintiff. On February 20, 1986, plaintiff indicated its intent to install a new roof "as soon as the weather permits." On March 23, 1986, plaintiff stated it intended to accept a bid on a roof within a week, and that repair work on the roof would begin shortly thereafter. On April 15, 1986, plaintiff indicated that it had accepted proposals for the roofing work and that the work would begin as the weather permitted. On April 29, 1986, plaintiff wrote to the tenants to indicate that roofing work would begin on May 5, 1986.

In addition, defendants' exhibits include complaints to plaintiff of insufficient or excessive heat in the premises and unclean washroom facilities. These complaints are dated November 19, 1985, December 26, 1985, January 2, 27, and 28, 1986, and April 24 and 25, 1986. Defendants' exhibits also include a July 1, 1986, letter from the Creative Group, Inc., to defendants, containing a proposal to subdivide the subject premises for leasing and use by the Creative Group. A letter dated July 2, 1986, indicates that defendants forwarded the Creative Group's lease proposal to plaintiff.

Plaintiff also attached to its brief exhibits admitted into evidence at trial. These documents include copies of the lease agreements between plaintiff and defendants dated January 20, 1984, and May 1, 1984. Additionally, plaintiff's exhibits include a proposal/contract dated April 5, 1986, from Ameier Roofing, Inc., for the replacement of the roof on the subject premises. Other exhibits are a sales order slip for equipment from Park Heating & Air Conditioning Supply Company, dated May 3, 1986, and a January 28, 1986, receipt for labor and materials regarding a new furnace from Mid-Town Ventilation.

Plaintiff also attached copies of drafts of office lease agreements between defendants and lessor, the Vantage Group, regarding the lease of office space in Oak Brook. The draft lease agreements are dated April 8, 23, and 28, 1986, and May 6, 1986. Various letters to defendants from Vantage Group regarding the terms of the proposed lease of the Oak Brook property, dated from early April 1986 to May 6, 1986, also are included. The May 6, 1986, letter from Vantage refers to the revised and apparently final draft lease agreements.

Plaintiff's exhibits also include correspondence of plaintiff. On January 15, 1986, plaintiff sent a letter to the Village of Oak Park

indicating its intention to repair the roof in March or April 1986. Plaintiff also sent letters to the Village of Oak Park on January 14 and 19, 1986, regarding the new furnace installed on the premises.

Plaintiff's exhibits also include a letter to its attorney stating plaintiff's belief that, contrary to defendants' complaints, the subject premises were not uninhabitable and that defendants apparently felt that their market was outside of Oak Park and defendants were "looking for a way out of their lease." On March 27, 1986, plaintiff's attorney wrote to defendants to indicate that his inspection of the subject premises showed that only one ceiling tile in the premises was missing, that the premises were not uninhabitable, and that plaintiff would not allow defendants to avoid their obligations under the lease.

As stated above, we consider on this appeal only those alleged problems with the premises which were documented, admitted into evidence at trial, and made available for this court's review. Those alleged complaints referenced by defendants for which no written proof is given except for a summarized reference to them in their brief can be given little, if any, weight. Further, we do not have the benefit of the transcript of the proceedings at trial. Therefore we are limited to the pleadings, orders, and related documents contained in the court record and the documentary evidence attached to the parties' briefs on appeal. Where there is any doubt, we must view the ambiguity due to the incomplete record against defendants-appellants. *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958; *Weaver v. Midwest Towing, Inc.* (1987), 116 Ill. 2d 279, 507 N.E.2d 838.

■■ Plaintiff's brief indicates that witnesses were called at trial to testify regarding the condition of the premises. The trial court's determination of the issue of constructive eviction depended, in significant part, on the credibility of the witnesses, who testified regarding the extent of the roof leaks and the true condition of the premises. The reasonableness of any delay in defendants' abandonment of the premises also is related to the condition of the premises. The testimony heard at trial regarding the exact condition of the premises and specific action taken by plaintiff in remedying the alleged problems would be significant regarding this issue of reasonableness.

The record contains evidence which indicates that plaintiff took some action to maintain and repair the roof even before it installed a new roof. For instance, on January 15, 1986, plaintiff sent a letter to the Village of Oak Park indicating that plaintiff had determined that

a new roof was needed for the subject premises, as some patches which had been installed three or four months earlier were not holding. Plaintiff indicated that the openings were "not serious" and that they would be repatched and monitored by the building manager until the spring, when a new roof would be installed. Additionally, witnesses were called at trial to testify regarding the extent of the leaks and the effect of the leaky roof on the premises and defendants' use of the property.

Absent a report of proceedings, however, we cannot surmise the extent and effect of any continuing leaking problems. As there was documentary evidence indicating that plaintiff monitored the building and made repairs, we cannot hold that the trial court's finding that defendants were not constructively evicted was contrary to the manifest weight of the evidence. (*Applegate v. Inland Real Estate Corp.* (1982), 109 Ill. App. 3d 986, 441 N.E.2d 379; *John Munic Meat Co. v. H. Gartenberg & Co.* (1977), 51 Ill. App. 3d 413.) Therefore, we affirm those portions of the trial court's judgment which found that defendants were not constructively evicted and that defendants were in breach of the lease agreements in abandoning the premises and failing to pay rent after the abandonment.

 In its cross-appeal, plaintiff contends that the trial court improperly denied plaintiff's request for attorney fees and costs. Plaintiff asserts that the following language contained in the lease agreements entitled plaintiff to fees and costs:

"If default be made in the payment of rent, or any installment thereof, as herein provided, Lessee hereby irrevocably constitutes any attorney of any Court of Record in this State, attorney for Lessee and in Lessee's name, from time to time, to enter the appearance of Lessee, to waive the issuance of process and service thereof, to waive trial by jury, and to confess judgment in favor of Lessor against Lessee for the amount of rent which may be then due hereunder, together with costs of suit and a reasonable sum for plaintiff's attorney's fees in or about the entry of such judgment, and to waive and release all errors and right of appeal from any such judgment, and to consent to an immediate execution thereon."

The rule in Illinois is that courts will not allow for a recovery of attorney fees where the provision for attorney fees is contained in the portion of an agreement between the parties regarding confession of judgment and the suit is instituted other than by confession of judgment. (*Schwaner v. Belvidere Medical Building Partnership* (1987), 155 Ill. App. 3d 976, 508 N.E.2d 522, citing *Dowty v. Holtz*

(1877), 85 Ill. 525; *Schmoldt v. Chicago Stone Setting Co.* (1941), 309 Ill. App. 377, 33 N.E.2d 182.) The language cited by plaintiff provides for recovery of attorney fees upon defendants's confessing judgment. The instant action, however, did not involve a confession of judgment. Accordingly, we find that the trial court's decision denying plaintiff attorney fees was proper.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and McNAMARA, J., concur.