METROPOLITAN LIFE INSURANCE COMPANY, successor in interest to College Hills Mall Associates, Plaintiff-Appellee, v. RICHARD L. NAUSS, d/b/a Luca Pizza, Defendant-Appellant.

Fourth District No. 4—91—0506

Opinion filed March 31, 1992.

Nile J. Williamson, of Peoria, for appellant.

John P. Schwulst, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

A jury returned verdicts in favor of plaintiff Metropolitan Life Insurance Company, upon its complaint, in the amount of $32,300 and in favor of Metropolitan Life Insurance Company as to defendant's counterclaim, following a trial in McLean County, Illinois. Defendant Richard L. Nauss, d/b/a Luca Pizza, appeals contending (1) the verdict is erroneous and must be set aside, as demonstrated by the fact that the amount awarded, though in favor of plaintiff, was substantially less than the amount of damages sought by the plaintiff; and (2) the verdict on his counterclaim was against the manifest weight of the evidence. He seeks a new trial. We affirm.

On October 10, 1986, defendant entered into a three-year lease with plaintiff's predecessor for a space in the College Hills Mall located in Normal, Illinois. Defendant took possession of that space on November 20, 1986. Defendant's space had a seating capacity of approximately 40 people.

In late February 1987, the space next to defendant was leased to Old Country Buffet, a restaurant with a seating capacity for approximately 300 people. Prior to the opening of Old Country Buffet, extensive construction was done on the premises, including varnishing the woodwork in the restaurant.

Defendant testified the odor from the varnish was unbearable and that the smell emanated into his walk-in cooler, thereby settling into all of the food stored in the cooler. Defendant testified all the food tasted like varnish and he was unable to serve it because of this varnish taste. Defendant also stated there was severe dust from the construction which covered the food and all the equipment in his restaurant. Defendant contended the problems with the dust and varnish smell lasted approximately four to six weeks. Defendant testified his customers returned the food because of the varnish taste and demanded the return of their money. However, defendant did not offer any evidence to establish whether he refunded the customers' money or how much money he actually lost because of the varnish taste and dust.

Raymond Baxter, general manager of College Hills Mall at all times relevant to this appeal, testified the varnish odor lasted only one week. Baxter admitted defendant had complained to the mall management about the smell, and in response, Baxter had asked the construction crew at Old Country Buffet to varnish only at night in order to minimize this odor problem.

Old Country Buffet opened for business on April 30, 1987. From the initial opening of the restaurant, large lines formed near its entrance and in such a manner as to go down the corridor toward defendant's restaurant. Defendant testified he complained several times to the mall management that these lines were blocking the entrances to his restaurant. In response to these complaints, Baxter asked the staff at Old Country Buffet to take measures to control these lines and direct them away from the entrances of defendant's restaurant. Accordingly, Old Country Buffet's management purchased stanchions and chains to direct the lines away from defendant's entrances. Old Country Buffet also placed people outside its entrance directing its patrons not to stand directly next to the walls of defendant's restaurant but to leave space between the line and the walls as well as space by the entrances to defendant's restaurant. Daily logs kept by security officers for the mall indicated only one complaint about these lines from defendant, i.e., on Mother's Day, May 10, 1987. Notations for June 2, 1987, and June 12, 1987, indicated there were

large lines at Old Country Buffet during the lunch and dinner hours but these lines did not block the entrances to defendant's restaurant.

On June 14, 1987, defendant vacated the premises without prior notice to plaintiff. Defendant did not pay rent for June 1987 nor any time thereafter. Baxter testified the basic rent for this space was $1,900 a month, but with additional expenses for items such as utilities and maintenance, the total rent is about $2,600 per month.

Baxter indicated the space vacated by defendant was empty from June 14, 1987, until he left the employment of College Hills Mall in April 1989. During that time period, Baxter showed the space to five or six potential lessees, but none of those businesses leased the premises. Thomas Joyce, the current manager for College Hills Mall, testified the space vacated by defendant was leased starting May 25, 1989. Joyce testified the space was vacant for almost 24 months and the total rents due for that time period were $62,579.42.

Plaintiff filed suit in October 1987, seeking past rent in the amount of $78,771.30, which it alleged had become immediately due by defendant's default. Plaintiff also sought $4,000 in attorney fees. Defendant filed a counterclaim alleging plaintiff breached the quiet enjoyment clause of the lease by allowing the lines at Old Country Buffet to block the entrances to his restaurant and allowing the varnish odor to seep into his restaurant. Defendant also raised an affirmative defense of "constructive eviction" by virtue of the varnish odor and lines from Old Country Buffet. The jury returned a verdict in favor of plaintiff on the complaint and against defendant on his counterclaim. Defendant appeals.

Defendant contends the jury verdict must be reversed because, although in favor of plaintiff, it was for an amount substantially less than the amount prayed for by plaintiff. Defendant suggests the uncontroverted evidence supported judgment in his favor, or if against him a verdict in the amount of $65,545.42, representing past rent due and attorney fees. He argues that since the jury awarded less than half this amount, without any credible evidence to allow a reduction, it is unsupported by the evidence. We disagree.

Defendant makes the argument that because the jury did not award plaintiff a verdict for lost rents from June 1, 1987, until May 25, 1989, plus attorney fees in the amount of $2,966, the judgment must be reversed and a new trial granted. Defendant argues the record supports and the jury should have entered a verdict in favor of the plaintiff in the sum of $65,545.42. This is a curious argument by defendant. No issue is presented by the plaintiff that the verdict is in-

adequate. The authorities cited by defendant concern plaintiff's questioning the adequacy of a verdict.

██ It is the jury's function to determine the preponderance of the evidence, and a reviewing court will reverse only if that determination is against the manifest weight of the evidence. (*Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 423, 412 N.E.2d 447, 454.) A reviewing court may order a new trial if the damages are manifestly inadequate, if it is clear that proved elements of damages have been ignored, or if the amount awarded bears no reasonable relationship to the loss suffered by the plaintiff. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 407, 485 N.E.2d 4, 6.) A verdict should be examined to ascertain the intention of the jury in returning it and, if the verdict is supportable, it will be molded into form and made to serve unless there is doubt as to its meaning. *Seaman v. Wallace* (1990), 204 Ill. App. 3d 619, 639, 561 N.E.2d 1324, 1338.

██ The mere fact that the verdicts returned were for a lesser sum than requested by the plaintiff will not be the basis for a reversal under the facts. (*Becker v. People* (1896), 164 Ill. 267, 273, 45 N.E. 500, 502; *Moyers v. Illinois Central R.R. Co.* (1915), 197 Ill. App. 179, 187; *LeMaitre v. Union Electric Power Co.* (1947), 331 Ill. App. 270, 274, 73 N.E.2d 125, 127.) The fact that the jury was less than generous does not necessarily mean that its award is legally or palpably inadequate. (*Brown v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1977), 51 Ill. App. 3d 1044, 1046, 367 N.E.2d 155, 156.) If there appears to be evidence suggesting a genuine conflict as to the legitimacy of the expenses sought, then the verdict of the jury should not be disturbed on review. *Potter v. Rodrick* (1979), 77 Ill. App. 3d 7, 12, 395 N.E.2d 746, 750.

The mere fact that the jury awarded plaintiff roughly half what it asked for in damages is not a basis for reversal. The jury heard testimony regarding plaintiff's attempts to relet the premises after defendant vacated them. Evidence was presented that the base monthly rate was $1,900 per month. The jury also heard evidence regarding the lines blocking the entrances to defendant's restaurant and the odors from the varnishing. The jury could have concluded defendant was entitled to an offset because of damages suffered by these inconveniences. The jury was presented with evidence of the measures taken by plaintiff to control the lines and could have concluded greater efforts might have been taken to minimize the damages to defendant. As there are several rational explanations for the reduc-

tion of damages awarded by the jury, the verdict will not be disturbed.

■■ Defendant next contends the jury verdict on his counterclaim was contrary to the manifest weight of the evidence. Plaintiff suggests defendant has waived this argument by failing to raise this issue in his post-trial motion.

Supreme Court Rule 366(b)(2)(iii) provides that "[a] party may not urge as error on review of the ruling on his post-trial motion any point, ground, or relief not specified in the motion." (134 Ill. 2d R. 366(b)(2)(iii).) Failure to raise an issue in a post-trial motion constitutes waiver of that issue on appeal. See, *e.g., Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337; *Kaiser Agricultural Chemicals v. Rice* (1985), 138 Ill. App. 3d 706, 486 N.E.2d 417.

After carefully examining defendant's post-trial motion, we conclude the issue of breach of the quiet enjoyment clause of the lease has been waived. In paragraph two of his post-trial motion, the only paragraph addressing "constructive eviction," defendant alleges the trial court erred in submitting the court's instruction No. 1, which defined the issues in this case. Defendant contends the instruction was improper because it did not properly define "constructive eviction" and included the word "permanent" in that definition. In his brief, however, defendant argues the verdict was against the manifest weight of the evidence, rather than challenging the propriety of the jury instruction. Inasmuch as error regarding jury instructions and the manifest weight of the evidence constitute different issues, defendant has waived the latter issue.

Moreover, even addressing defendant's argument, we find it to be without merit. The covenant or warranty of quiet enjoyment is prospective in nature and is breached only when there is an actual or constructive eviction of the covenantee by the paramount titleholder. (*Brown v. Lober* (1979), 75 Ill. 2d 547, 553, 389 N.E.2d 1188, 1191.) A constructive eviction requires that the landlord have done something of a grave and permanent character with the intention of depriving the tenant of enjoyment of the premises. (*Advertising Checking Bureau, Inc. v. Canal-Randolph Associates* (1981), 101 Ill. App. 3d 140, 146, 427 N.E.2d 1039, 1044.) There can be no constructive eviction, however, without the vacating of the premises. (*Dell'Armi Builders, Inc. v. Johnston* (1988), 172 Ill. App. 3d 144, 148, 526 N.E.2d 409, 411-12.) Where premises leased are rendered useless to the tenant or the tenant is deprived, in whole or in part, of the possession and enjoyment thereof as the result of the wrongful act of the landlord,

there is a constructive eviction. *John Munic Meat Co. v. H. Gartenberg & Co.* (1977), 51 Ill. App. 3d 413, 416, 366 N.E.2d 617, 620.

A constructive eviction discharges the liability of the tenant to pay rent or otherwise comply with the terms of the lease, and he may abandon the premises. (*Automobile Supply Co. v. Scene-In-Action Corp.* (1930), 340 Ill. 196, 200-01, 172 N.E. 35, 37.) However, the tenant may not abandon the premises before allowing the lessor a reasonable opportunity to remedy the problem. (*Applegate v. Inland Real Estate Corp.* (1982), 109 Ill. App. 3d 986, 990, 441 N.E.2d 379, 383.) The question of whether a tenant has been constructively evicted is one of fact, and the decision of the trier of fact will not be reversed unless against the manifest weight of the evidence. *Applegate,* 109 Ill. App. 3d at 989, 441 N.E.2d at 382.

The evidence presented at trial was sufficient to support the jury's verdict that defendant was not constructively evicted from the leased premises. The varnish odors emanating from Old Country Buffet lasted only four or five days and cannot be characterized as "grave or permanent." Moreover, plaintiff took reasonable steps to minimize the damage to defendant by asking the construction crew at Old Country Buffet to varnish only at night.

Likewise, the lines at Old Country Buffet were neither "permanent" nor "grave" in character and only on one day did they go past *both* entrances of defendant's restaurant. The security officers' daily logs indicated a sole complaint was made on Mother's Day, May 10, 1987. Other entries in those logs were dated June 2, 12, and 13 and indicated the lines were present but did not block defendant's entrances. The mall management staff asked Old Country Buffet to attempt to control their lines and Old Country Buffet did so by posting people outside the restaurant to direct the lines away from the entrances and walls of defendant's restaurant. Photographs entered into evidence demonstrated the lines were several feet away from the walls of defendant's restaurant and did not block the entrances to it. The jury could reasonably have concluded that plaintiff remedied the problem and defendant's abandonment of the premises was unjustified.

Therefore, the jury verdicts in favor of plaintiff on the complaint and against defendant on his counterclaim were not against the manifest weight of the evidence.

Affirmed.

GREEN, P.J., and STEIGMANN, J., concur.