SHAKER AND ASSOCIATES, INC., Plaintiff-Appellee, v. MEDICAL TECHNOLOGIES GROUP, LTD., Defendant-Appellant (Anne Gose, Defendant).

First District (2nd Division)   No. 1—99—1679

Opinion filed June 30, 2000.

Joseph G. Bisceglia and Michelle D. Mills, both of Jenner & Block, of Chicago, for appellee.

Peter Ordower and Stanley D. Schwartz, both of Chicago, for appellant.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

The plaintiff gave the defendant a five-year lease from February 1, 1994, through January 31, 1999, for commercial office space in an office building occupied by numerous tenants. The defendant alleges that once it took possession of the premises it encountered a variety of defects in the building that ultimately rendered the space unusable for its business. The defendant stopped paying rent in September 1994. The plaintiff filed a forcible detainer action on September 26, 1994, but the defendant surrendered possession on December 20, 1994, before the date of the trial.

On December 6, 1994, the plaintiff filed this action seeking all rents until the end of the lease as well as attorney fees. The defendant pled various affirmative defenses and also counterclaimed alleging breach of the lease, fraud and negligence. After the defendant twice amended the counterclaims and affirmative defenses, the trial court dismissed them. On October 7, 1998, the court granted summary judgment for the plaintiff, awarding rents from the time the defendant stopped paying until the time that the plaintiff was able to relet the premises. The court also awarded attorney fees.

The defendant appeals the trial court's summary judgment award of lost rents and attorney fees and the dismissal of its counterclaims. The defendant argues that the court erred: (1) in interpreting the lease so as not to include a duty to repair the alleged defects; (2) in dismissing the defendant's counterclaims and affirmative defenses relating to constructive eviction; and (3) in its assessment of damages, particularly the inclusion of lost rents after the defendant quit the premises.

We affirm.

# BACKGROUND

The defendant, Medical Technologies Group, Limited (Medtech), is in the business of reviewing claims for medical benefits. On November 30, 1993, Medtech entered into a five-year lease from February 1, 1994, through January 31, 1999, with the plaintiff, Shaker & Associates, Inc., doing business as Shaker Management Company (Shaker), for commercial office space in Oak Park. The premises were located in an office building shared by numerous tenants. The rent was $4,465 per month. As agreed to under the lease, Shaker built out the premises and made certain improvements in order to make them suitable for Medtech's business. Medtech took possession in mid-January 1994.

Shaker alleges that Medtech was consistently late in its rent payments. In September 1994, Medtech stopped paying rent altogether. Shaker then served Medtech with a five-day notice and filed a forcible detainer action on September 26, 1994. Medtech vacated the premises on December 20, 1994, shortly before the trial date.

On December 6, 1994, Shaker filed this suit seeking to collect all rents until the end of the lease as well as attorney fees. Shaker also named Anne Gose, Medtech's chief executive officer, and Ralph Menezes, another officer of Medtech, as defendants, alleging that they had guaranteed the lease. Shaker found a new tenant for the premises starting on February 1, 1997.

Medtech filed a countercomplaint and affirmative defenses on February 14, 1995. Medtech alleged that from the beginning of its occupancy it encountered various defects in the building, which eventually made it unable to continue its business there. In particular, Medtech alleged that Shaker did not provide adequate air conditioning in the summer or heat in the winter. According to Medtech, this problem caused Gose to be hospitalized for heat exhaustion on July 14, 1994, caused one employee to quit and made various other employees ill, and forced the office to be closed on at least one afternoon. Medtech also alleged that frozen pipes and broken skylights caused flooding of the office and that Shaker failed to provide cleaning service and light bulbs as agreed in the lease.

Medtech set out three counts, alleging: (1) that Shaker had violated the express terms of the lease by not providing heat and air conditioning, not providing cleaning services, not providing light bulbs, not keeping the plumbing in satisfactory condition and not making repairs; (2) that Shaker had committed fraud by agreeing to provide heat and air conditioning when it knew or should have known that the system did not function properly; and (3) that Shaker was negligent in failing to inform Medtech of the defective heating, ventilation and air-conditioning (HVAC) unit. Nevertheless, the counterclaim

did not specify how Medtech had been harmed by the alleged defects or when the defects occurred. Upon Shaker's motion the trial court dismissed Medtech's counterclaims and struck its affirmative defenses. The counterclaim based on negligence was dismissed with prejudice, but the other counts and defenses were dismissed with leave to replead.

On December 14, 1995, Medtech filed its first amended counterclaim and affirmative defenses. This pleading contained counts for breach of contract and fraud. The allegations of the original counter-complaint were repeated, but with significantly more detail. The complaint set out a clause of the lease that purportedly obligated Shaker to maintain the heating and cooling system, and then charged:

> "Notwithstanding Shaker's contractual obligations, Shaker breached the agreement by:
>
> (a) Beginning on or around February 1, 1994 and continuing until on or around December 20, 1994, Shaker failed to provide Medtech with sufficient heat to the premises to allow for comfortable occupancy of the building. The temperature on the premises was regularly measured in the 48-54 [F]arenheit range in the winter, early spring and fall months of 1994;
>
> (b) Beginning on or around June, 1994 and continuing throughout the late spring, entire summer and early fall, Shaker failed to provide adequate air conditioning for comfortable occupancy of the building. The temperature on the premises regularly exceeded ninety degrees [F]arenheit on a regular basis during the summer months of 1994[.]"

Shaker alleged that "[t]his failure rendered the premises unusable for the commercial purpose of Medtech and insufficient for comfortable occupancy and quiet enjoyment" and that it caused loss of business income. The amended counterclaim additionally alleged that Shaker did not install phone lines as required, there were holes in the walls, the windows would not open, and the premises were 400 square feet smaller than Shaker had claimed. On February 19, 1997, the trial court dismissed the counterclaims under sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1996)), with leave to replead the breach of contract claim.

Medtech filed a second amended counterclaim on May 28, 1997. This complaint alleged that Shaker breached the express terms of the lease as well as the covenant of quiet enjoyment. The only basis that Medtech gave in this pleading for its claim of breach, however, was the alleged failure to provide heat and air conditioning. In this complaint Medtech did not provide specifics about when the HVAC unit had malfunctioned, exactly how hot or cold it became, and how this caused

damages. On Shaker's motion, the trial court dismissed the breach of contract counterclaim and the corresponding affirmative defenses with prejudice under section 2—615. 735 ILCS 5/2—615 (West 1996). The trial court, however, did not dismiss Medtech's affirmative defense that Shaker was not entitled to any rents for the period after it found a new tenant for the premises.

The trial court also struck without prejudice Gose's and Menezes' affirmative defenses to the claim against them as guarantors of payment of rent. Gose repled the affirmative defense, and Shaker's count against her remains pending before the trial court. Shaker voluntarily dropped its claim against Menezes.

On October 7, 1998, the court granted summary judgment to Shaker on count I of its complaint for lost rent in the amount of $176,438.14. This figure represented rents from September 1994, when Medtech stopped paying rent, until February 1997, when Shaker was able to relet the premises. The court denied Shaker's request for rents covering the full five years of the lease. The court also awarded Shaker $50,000 in attorney fees, an amount that had been stipulated to by the parties.

Medtech now appeals the summary judgment award of lost rents and attorney fees as well as the dismissal of its counterclaims and affirmative defenses. Medtech argues that the trial court's dismissal of its affirmative defenses and counterclaims was based on an erroneous reading of the lease. Medtech also claims that the summary judgment ruling was in error in including damages for lost rent after Medtech left the premises and in granting Shaker attorney fees.

ANALYSIS

■ We first address Medtech's claim that the trial court erred in dismissing its counterclaims and striking its affirmative defenses under sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1996)). In reviewing the dismissal of a complaint under section 2—615 (*Doe v. McKay*, 183 Ill. 2d 272, 274, 700 N.E.2d 1018, 1020 (1998)) and section 2—619 (*Health Cost Controls v. Sevilla*, 307 Ill. App. 3d 582, 586, 718 N.E.2d 558, 562 (1999)), we apply a *de novo* standard of review.

I

Medtech initially contends that the trial court's dismissal of its counterclaim and defenses related to breach of contract is based on an erroneous interpretation of the lease. According to the trial court's interpretation, the lease did not impose any duty on Shaker to provide heat and air conditioning. The disputed portion of the lease provides as follows:

"As long as the Tenant is not in default of the Lease, Landlord shall provide the following facilities and services to Tenant without additional charge (except as otherwise provided herein or as is included in Adjustment or Additional Rent):

1. Electricity to operate the Building's central air conditioning and heating systems daily from 8:00 A.M. to 8:00 P.M. (Saturday to 12:00 P.M.), Sundays and holidays excepted, to provide a temperature and humidity condition which, in Landlord's reasonable discretion or by governmental regulation, is necessary for the comfortable occupancy of the Building. Notwithstanding the foregoing, Landlord shall not be responsible for temperature and humidity variations in the Premises which are caused by Tenant's not meeting or exceeding a density factor of one person per one hundred square feet of the Premises, a connected electrical loan of $2^1/_2$ watts per square foot of the Premises for lighting and Tenant's failure to close building standard blinds or draperies when the sun is shining into the Premises."

The trial court interpreted this section as imposing a duty on Shaker only to provide electricity but not to provide heating or air conditioning. In striking the original affirmative defenses and counterclaims, the trial court explained:

"But the lease—I can't rewrite the terms of the lease. but the actual lease itself says that the landlord is supposed to provide electricity to operate the building's central air conditioning and heating system sufficient to provide a temperature and humidity condition.

\* \* \*

It's a duty to provide electricity, whereas the tenant had the duty to maintain and repair these items, it seems."

Medtech argues that this interpretation was flawed in two respects. First, the lease mentions three situations in which the landlord "shall not be responsible" for the temperature. It would make no sense to express exceptions to the landlord's duty to regulate the temperature unless the landlord had such a duty. Second, Medtech posits that it does not make sense to interpret the lease as imposing the duty to repair the building's heating and air conditioning unit on Medtech, when Medtech allegedly had no access to the unit. According to Medtech, the system was under Shaker's exclusive control. We agree with Medtech's reading of this portion of the lease. In our view, Shaker was responsible for temperature and humidity variations as long as Medtech had enough people in the office, enough lighting, and kept the blinds closed.

■ Although the trial court's reading of the lease was erroneous, in this case the error was harmless due to the deficiency of Medtech's

pleadings. As an initial matter, we note that Medtech waived the issues not included in its second amended counterclaim and affirmative defenses. "Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn." *Bowman v. County of Lake*, 29 Ill. 2d 268, 272, 193 N.E.2d 833, 835 (1963).

The second amended counterclaim is based on breach of contract. It is accompanied by affirmative defenses based on constructive eviction, breach of the covenant of quiet enjoyment, and failure to mitigate damages. The only allegation of wrongdoing given in this pleading is the failure to repair the HVAC unit. Accordingly, Medtech waived its complaints about the light bulbs, plumbing, phone lines *et cetera*. Furthermore, the only bases for liability given are breach of the clause requiring Shaker to provide climate control and breach of the covenant of quiet enjoyment. Therefore, the claims relating to negligence, fraud and purported breaches of other sections of the lease are waived. Medtech could have avoided waiver by inserting a paragraph or footnote in the pleading indicating that it was preserving the other claims. See *Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108, 114, 664 N.E.2d 267, 271 (1996).

■ Since the pleadings prior to the second amended counterclaim and affirmative defenses are waived, we address the sufficiency of the latter pleading. In our view, the pleading is insufficient as a matter of law due to the lack of specificity therein. A trial court may grant a section 2—615 motion to dismiss a complaint that does not contain sufficient allegations of fact to state a cause of action. *Singer v. Brookman*, 217 Ill. App. 3d 870, 878, 578 N.E.2d 1, 5 (1991). In this case the second amended countercomplaint merely alleged that "[s]aid heating and air conditioning system failed to perform its function per the lease" and that Shaker would not correct the problem in order to "provide the reasonably necessary temperature and humidity conditions appropriate for the comfortable occupancy of the building." In characterizing the damages, Medtech only stated that as a result of the breach it suffered "loss of business income" and Anne Gose suffered "injury to her person." Although Medtech provided specifics in its first amended counterclaim, in its second amended counterclaim, Medtech did not allege how hot or cold it became on the premises, how the temperature variations led to its loss of profits and the unspecified personal injury, or that such damages were within the contemplation of the parties when they made the contract.

In the absence of supporting facts, the general allegations in Medtech's countercomplaint are mere conclusions. *Ontap Premium Qual-*

*ity Waters, Inc. v. Bank of Northern Illinois, N.A.*, 262 Ill. App. 3d 254, 259, 634 N.E.2d 425, 429 (1994). Conclusory allegations of fact or law are not admitted in a section 2—615 motion. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 417, 430 N.E.2d 976, 981 (1981). If, after deleting such, there are not sufficient facts alleged to support a claim, the pleading is properly stricken. *Knox College*, 88 Ill. 2d at 417, 430 N.E.2d at 981.

Medtech contends that an affidavit of Anne Gose submitted in opposition to summary judgment provides the necessary detail. But at the time of the motion for summary judgment, Medtech's counterclaims and most of its affirmative defenses had already been dismissed with prejudice. The affidavit was not before the court when it granted Shaker's section 2—615 motion. Accordingly, despite the erroneous reading of the lease, it was not error to dismiss the breach of contract counterclaim.

## II

Medtech next claims that the trial court erred in striking its affirmative defenses relating to constructive eviction and breach of the covenant of quiet enjoyment. The claim of breach of the covenant of quiet enjoyment requires actual or constructive eviction. *Advertising Checking Bureau, Inc. v. Canal-Randolph Associates*, 101 Ill. App. 3d 140, 146, 427 N.E.2d 1039, 1044 (1981). Medtech argues that Shaker's failure to provide heat and air conditioning constituted a constructive eviction, which released Medtech from its obligation to pay rent. Constructive eviction is something of a serious and substantial character done by the landlord with the intention of depriving the tenant of the enjoyment of the premises. *American National Bank & Trust Co. v. Sound City, U.S.A., Inc.*, 67 Ill. App. 3d 599, 601, 385 N.E.2d 144, 145 (1979). There need not be an express intention on the part of the landlord to so deprive the tenant, for "persons are presumed to intend the natural and probable consequence of their acts." *John Munic Meat Co. v. H. Gartenberg & Co.*, 51 Ill. App. 3d 413, 416, 366 N.E.2d 617, 620 (1977). A tenant is justified in abandoning the premises if the landlord's breach of the covenant to repair makes them unfit for the purpose for which they were leased. *Dell'Armi Builders, Inc. v. Johnston*, 172 Ill. App. 3d 144, 148, 526 N.E.2d 409, 411 (1988)

We note that Medtech stopped paying rent in September 1994 but did not leave the premises until December 1994. Constructive eviction relieves the tenant from the responsibility to pay rent (*Dell'Armi*, 172 Ill. App. 3d at 148, 526 N.E.2d at 411), but only after the tenant quits the premises (*Ira Handelman Building Corp. v. Dolan*, 15 Ill. App. 2d

49, 145 N.E.2d 250 (1957) (abstract of op.)). There can be no constructive eviction without the vacating of the premises. *Dell'Armi*, 172 Ill. App. 3d at 148-49, 526 N.E.2d at 411-12. As a result, any affirmative defense based on constructive eviction would apply only to the period after Medtech vacated the building.

■ Shaker first argues that there has been no act of a grave and permanent nature evidencing an intention on its part to deprive Medtech of quiet enjoyment of the premises. However, failure to provide heat can constitute the basis for a constructive eviction. *Automobile Supply Co. v. Scene-in-Action Corp.*, 340 Ill. 196, 202, 173 N.E. 35, 37-38 (1930). Shaker also maintains that, since it made some efforts to repair the heating and cooling system, it cannot have had the requisite intent to oust Medtech. But the fact that some repair efforts were made also does not preclude a claim of constructive eviction. See *Applegate v. Inland Real Estate Corp.*, 109 Ill. App. 3d 986, 441 N.E.2d 379 (1982) (constructive eviction found because of roach infestation despite fact that landlord had sent an exterminator).

Shaker also contends that Medtech has waived any claim of constructive eviction since it remained in the premises for many months after learning that the heating and cooling system was not functioning properly. When a landlord commits a breach of the duty to repair that would justify the tenant's abandoning the premises, the tenant is allowed a reasonable time to vacate. *Automobile Supply Co.*, 340 Ill. at 203, 173 N.E. at 38. A tenant who does not vacate within a reasonable time, however, is considered to have waived the landlord's breach. *Dell'Armi*, 172 Ill. App. 3d at 149, 526 N.E.2d at 412. Whether the time between the landlord's breach and the tenant's abandonment of the premises is reasonable is generally a question of fact. *Automobile Supply Co.*, 340 Ill. at 203, 173 N.E. at 38. The burden of proof is upon the tenant to show that the time was reasonable. *Dell'Armi*, 172 Ill. App. 3d at 149, 526 N.E.2d at 412. Various factors are considered in determining whether the length of time before the vacation is reasonable, such as reliance upon promises by the landlord to repair and the time required to find a new location. *Dell'Armi*, 172 Ill. App. 3d at 149, 526 N.E.2d at 412.

Medtech argues that its business requires specially customized office space and, accordingly, it needed more time than the ordinary tenant would to find a new location. While this may be true, in our view, this factor by itself cannot justify a delay of 10 months. See *Automobile Supply Co.*, 340 Ill. at 203, 173 N.E. at 38 (commercial tenant not justified in waiting two months after loss of heat before moving out). Accordingly, the trial court did not err in striking Medtech's affirmative defenses relating to constructive eviction and breach of the covenant of quiet enjoyment.

## III

Finally, we address Medtech's contention that the trial court erred in assessing excessive damages and awarding attorney fees.

Without the defenses and counterclaims of breach of contract and constructive eviction, Medtech had no basis to dispute that it was liable for at least some rent. A motion for summary judgment should be granted when the pleadings, depositions, admissions and affidavits establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 530, 675 N.E.2d 897, 905 (1996). We review the grant of summary judgment *de novo. McNamee v. State*, 173 Ill. 2d 433, 438, 672 N.E.2d 1159, 1162 (1996). In our view, once the counterclaims and affirmative defenses were dismissed, no genuine issue of material fact remained on the issue of liability and the trial court was justified in granting summary judgment.

■ However, Medtech contends that the damages were excessive. According to Medtech, the trial court should have only granted Shaker lost rents for the time that Medtech occupied the building and should not have additionally awarded rent from the time Medtech vacated the premises until it could relet them. As a general rule, eviction (whether actual or constructive) ends a tenant's obligation to pay rent. *Yarger v. Schabacker*, 15 Ill. App. 2d 459, 146 N.E.2d 399 (1958) (abstract of op.). However, when the lease specifically so provides, the tenant's duty to pay rent survives eviction. *Elliott v. LRSL Enterprises, Inc.*, 226 Ill. App. 3d 724, 729-30, 589 N.E.2d 1074, 1077-78 (1992). In this case, the lease unequivocally provides that Shaker may continue to collect rents after retaking the premises. According to the lease, if the tenant defaults, the landlord may either terminate the lease, whereupon the tenant must "pay to Landlord a sum of money equal to the number of months of the otherwise remaining term of this Lease times the monthly Fixed and Adjustment Rents chargeable to Tenant," or the landlord may retake possession, without terminating the lease "or in any way releasing Tenant from its obligation to pay Fixed, Adjustment and Additional Rents."

Medtech also argues that the trial court should not have awarded attorney fees. However, the lease provides that "[t]he losing party shall pay upon demand to the prevailing party all court costs, charges and expenses, including reasonable attorney's fees and costs, incurred in enforcing this lease." Since we have determined that the trial court properly awarded summary judgment to Shaker on its claim for lost rent, the trial court was also correct in awarding attorney fees.

For the foregoing reasons, we affirm the trial court's dismissal of Medtech's countercomplaint and affirmative defenses, and we affirm

the grant of summary judgment for Shaker on its claim for lost rent and attorney fees.

Affirmed.

McBRIDE and McNULTY, JJ., concur.